WILLIAM HART v. STATE OF MISSISSIPPI.

[39 South. Rep., 523.]

1. CONSTITUTIONAL LAW. *Statutes. Presumptions.*

A statute will not be adjudged unconstitutional unless it plainly conflicts with some provision of the fundamental law; and conflicts will not be presumed.

2. SAME. *Constitution* 1890. *Constitution United States, art. 1, sec. 8, cl. 3. Ib., fourteenth amendment, sec. 1. Dramshops. Code* 1892, § 1604. *Intoxicants. Aiding unlawful sale.*

Code 1892, § 1604, making it a misdemeanor to act as agent for either the seller or buyer in effecting an unlawful sale of intoxicants, in territory where the sale is prohibited, does not violate:

(*a*) Any section of the Constitution 1890; nor

(*b*) The interstate commerce clause of United States Constitution, art. 1, sec. 8, cl. 3; nor

(*c*) The fourteenth amendment to United States Constitution, sec. 1, forbidding any state to abridge the privileges or immunities of citizens of the United States.

3. SAME.  *Illegal sale.  Concrete case.*

> Where an agent of a firm of Louisiana liquor dealers, composed of himself and a copartner, took an order and received the purchase price of whisky in Mississippi, at a place in which the sale of intoxicants was prohibited, and the firm delivered the whisky in Louisiana to a common carrier for transportation and delivery in Mississippi to the purchaser, in pursuance of the order, a prosecution will lie in Mississippi against the agent under said statute, the whisky having been so transported and delivered by the carrier.

FROM the circuit court of Lincoln county.

HON. MOYSE H. WILKINSON, Judge.

Hart, the appellant, was indicted, tried, and convicted for acting as the agent of the seller in effecting the unlawful sale of whisky in the city of Brookhaven—the sale of intoxicants being prohibited in Lincoln county, wherein Brookhaven is situate and of which it is the county seat—and appealed to the supreme court.   The facts are stated in the opinion of the court.

The statute on which the prosecution was based is in the following words:

"1604.   Acting as Agent, etc. (Laws 1890, p. 71).—If any person shall act as agent or assistant of either the seller or purchaser, in effecting the sale of any liquor, bitters, or drink the sale of which without license is unlawful under the provisions of this chapter, in any county, district, territory, or municipality in which the sale of such liquor, bitters, or drink is prohibited by law, he shall be guilty of a misdemeanor, and, on conviction, shall be punished by a fine of not less than twenty dollars nor more than one hundred and fifty dollars, and imprisoned in the county jail not less than one week nor more than three months."

*Brennan & Hannah,* for appellant.

In the case at bar the sale of the liquor was consummated upon the delivery thereof to the express company at Poncha-

toula, La. *Pearson* v. *State,* 66 Miss., 510; *State* v. *Flannagan,* 38 W. Va., 53 (45 Am. St. Rep., 836); *Herron* v. *State,* 51 Ark., 133 (7 L. R. A., 184); *State* v. *Shields* (La.), 34 South. Rep., 673.

If Campbell, appellant's principal and partner, violated no law in making the sale in the state of Louisiana, he had the right, in the conduct of his business, to solicit orders here in effecting said sale. Upon such orders he had a legal right to deliver his goods to the common carrier in the state of Louisiana to be shipped into the state of Mississippi for delivery here. To deprive him of this right would be an attempt to interfere with and prohibit the importation of an article of commerce from one state to another, a principle which is condemned in the cases of *Bowman* v. *Chicago & Northwestern Ry. Co.,* 125 U. S. (31 L. ed., 700); *Leisy & Co.* v. *Hardin,* 135 U. S. (34 L. ed., 128); *State* v. *Fulker,* 43 Kan., 247 (7 L. R. A., 187).

If the appellant's principal, or partner, under the authorities above cited, had the right of transportation and importation from one state to another, it carried with it the right to sell in such states. In the case of *Brown et al.* v. *State of Maryland,* 12 Wheat. (U. S.), 419 (6 L. ed., 678), the court said: "There is no difference in effect between a power to prohibit the sale of an article and a power to prohibit its introduction into the country. The one would be a necessary consequence of the other." This principle has been applied and upheld in the case of *Leisy* v. *Hardin, supra.*

In construing the question of agency, it has been held in the case of *Beck* v. *State,* 69 Miss., 217 (13 South. Rep., 835), that there is no agency in crime. If, then, Campbell committed no crime in Lincoln county, Hart, the agent of Campbell, could have committed none.

A regulation made in the exercise of the police power of the state cannot, under that guise, be made a direct burden and

obstruction to interstate commerce. *Brennan* v. *Titusville,* 153 U. S., 287 (38 L. ed., 719), and cases cited there. In the case of *Caldwell* v. *State of North Carolina,* 187 U. S., 622 (47 L. ed., 336), the supreme court of the United States held that an ordinance requiring the agent of a nonresident portrait company to pay a license tax was invalid as an interference with interstate commerce. *Stockard* v. *Morgan,* 185 U. S., 27 (46 L. ed., 785), and cases there cited.

*J. N. Flowers,* assistant attorney-general, for appellee.

This is not a case of soliciting orders. Orders are mere offers to buy, are passed upon by the house for which they are taken and to which the offers to buy are made, and when the orders are passed upon by the house and accepted, and the goods delivered to the carrier, the contract is completed.

Hart, the appellant, not only received orders to be filled in Louisiana, but collected the money then and there in Lincoln county. He did not simply bring the buyer and seller together, but, acting for the seller, closed the deal on the spot. He did not deliver the liquor until he went home or sent in the orders, but he made the contract in Lincoln county. It was not the mere taking of orders subject to the approval of the dramshop keepers at Ponchatoula, but the making of contracts to be filled by the dramshop in Louisiana. Nothing remained to be done but to deliver the intoxicants. The contract was not made in Louisiana, but in Mississippi. The delivery of the intoxicants was the execution of the contract. The contract was made by the principal through his agent in Lincoln county.

Appellant was an agent with large powers. He not only received proposals to buy, in the shape of orders to ripen into contracts if accepted by the principal, but he made the contract himself, receiving the purchase price, and then had the liquors delivered from the dramshop of his principal.

Under counsel's own argument, appellant made a contract in violation of sec. 1604. He made one which his principal himself

could not legally make at that place.　Campbell, the principal, could not come into Mississippi and close contracts with persons for the sale of liquors, although he might deliver intoxicants from his dramshop in Louisiana.

If we accept the issue tendered by counsel for appellant and admit that the character of the contract determines the guilt or innocence of the accused, the judgment must be affirmed.

We take it that counsel will not contend that the commerce clause of the federal constitution would be violated by the enforcement of our statute against one who makes his contracts in Lincoln county, although his intoxicants be in another state at the time and have to be delivered from such other state.　In fact, counsel labor to show that the weight of authority is that where orders are taken by a solicitor and sent to his house in another state and they are accepted, the contract is made in the state where the orders are received and accepted.,　By this argument they recognize the proposition that the commerce clause of the federal constitution does not protect one who makes his contracts in prohibited territory, and that a state may prohibit the making of certain contracts within the state, although it is to be executed by one of the parties by shipping goods which are at the time in another state, and must, of necessity, be interstate commerce while being transported to the buyer.

In the case of *O'Neil* v. *Vermont,* 144 U. S., 323 (36 L. ed., 450), the supreme court of the United States accepted the holding of the Vermont supreme court to the effect that, under circumstances of the kind above enumerated, the contract was made where the order was given, and held that the decision of the question as to where the contract was made did not involve any federal question.　But in *Express Co.* v. *Iowa,* 196 U. S., 133 (49 L. ed., 417), the same court said that if, in deciding whether the commerce clause of the federal constitution had been violated, it became necessary for that court to declare the *situs* of the contract, then the finding of the state court would not be

accepted as final.    In that case the supreme court of Iowa had followed previous holdings of that court to the effect that in such cases the contract was made at the place where the order was taken.    Taking this view of the case, the Iowa court held that the commerce clause of the federal constitution was not involved, or at least was not violated.    The supreme court of the United States on appeal, the federal question having been properly raised and presented to that court, refused to accept as final the finding of the supreme court of Iowa that the contract under consideration was made in Iowa, and not in Illinois, but took up the contract and decided that it was made in Illinois, and hence the enforcement of the Iowa statute in that case was violative of the commerce clause of the federal constitution.    The court treated the contract question as being vital.

TRULY, J., delivered the opinion of the court.

We experience no difficulty in arriving at the conclusion that Code 1892, § 1604, is a legitimate and valid expression of legislative will.    It is the universally accepted rule of statutory construction that no act of the legislature will be condemned as violative of or repugnant to the fundamental law unless it manifestly be in palpable conflict with some plain provision of the state or federal constitution; and, as such conflict is not to be implied, it is the duty of the court, whenever possible, to give every expression of legislative will such construction as will enable the statute to have effect.    "Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution and give it the force of law, such construction will be adopted by the courts.    An inquiry into the validity of an act, on the ground that it is unconstitutional, is an inquiry whether the will of the representative, as expressed in the law, is or is not in conflict with the will of the people as expressed in the constitution; and unless it be clear that the legislature has transcended its authority the courts will not interfere.    Acts of the legislature constitutionally organized are presumed to be

constitutional, and it is only where they manifestly infringe some of the provisions of the constitution, or violate the rights of the citizen, that their operation and effect can be impeded by the judicial power." *Burnham* v. *Sumner,* 50 Miss., 520. Tested by the rule of construction as thus enunciated, it is manifest that the statute under review does not "violate the rights of the citizen;" nor does it contravene any provision of the state constitution.

That the legislative department of the state, in the exercise of police power, is vested with plenary power to regulate or prohibit the sale of intoxicating liquor, if ever debatable, is no longer with us an open question. Says this court in *Rohrbacher* v. *City of Jackson,* 51 Miss., 743: "It would seem that it ought hardly to be questioned at this day that it belongs to the police power of the state to regulate the retail dealing in and sale of intoxicating liquors. Perhaps all the states have legislated on the subject, some by total prohibition and others by dealing with the subject under rules and regulations. Such legislation rests on the popular conviction that it is to the interests of morals, sobriety, industry, and good order that the state should hold the traffic under surveillance. The state may deal with the subject by absolute prohibition or by regulations. . . . The police power extends to wholesome restrictions on property and individuals, in order to secure the general health, comfort, and prosperity of the state. The power of the legislature cannot be questioned." *Schulherr* v. *Bordeaux,* 64 Miss., 59 (8 South. Rep., 201). If, therefore, the legislature has the power to prohibit absolutely the sale of intoxicating liquors, and make any violation of such prohibitory law a criminal offense, obviously it may also forbid any one to assist in the commission of such offense and provide for the punishment of those who aid or assist. It is true, as stated by counsel for appellant, that generally there is no agency in crime. It is also true that all who participate in the commission of a misdemeanor are principals.

But this does not prevent the legislature, in the exercise of its unquestionable power, from making criminal other acts which, in its judgment, militate against the "general health, comfort, and prosperity of the state." Nor does it prevent the fixing of gradations in the punishment of crimes. Far from being the exercise of a doubtful power, we think the statute here assailed falls clearly within the well-defined and recognized line of legislative authority.

But the validity of the statute is also challenged as infringing the provisions of the federal constitution. Is this contention sound? Clearly the statute does not by its terms, nor by any rational intendment, discriminate between citizens of this and any other state. "Any person," says the statute, who may "act as agent or assistant of either the seller or purchaser in effecting the sale" of intoxicating liquor in a place where such sale "is prohibited by law" shall be guilty of a misdemeanor. The penalty is imposed upon every person who commits the offense therein defined. Regardless of citizenship, "any person" who violates the law must suffer the punishment prescribed thereby. The legislature, in its wisdom and in the exercise of an undoubted power, has made the commission of certain acts a crime. It punishes the act when committed by our own citizens; surely the transient nonresident is not entitled to more lenient treatment.

Nor do we think the statute in conflict with the interstate commerce clause of the federal constitution. It imposes no burden upon the nonresident dealer by reason of his citizenship, nor does it place any limitation or restriction upon free commerce between the states. It may be conceded, as contended, that to the extent that this statute tends to reduce the consumption of intoxicating liquors, it to that extent decreases their importation, and therefore, indirectly, at least, it impedes free interstate commerce. The same argument is equally applicable and more forceful when applied to absolute prohibitory laws, yet

we have already seen that such are uniformly upheld. "It may be that the effect of the law is to prevent the importation of liquors from other states, but the distinction between state restrictions upon the importation, and state restrictions upon the sale of a commodity when within the state, is clearly recognized and well defined." *Lang* v. *Lynch* (C. C.), 38 Fed. Rep., 489 (4 L. R. A., 831) ; License Cases, 5 How., 504 (12 L. ed., 256) ; *State* v. *Delamator* (S. D.), 104 N. W., 537 ; *Mugler* v. *Kansas,* 123 U. S., 623 (8 Sup. Ct., 273 ; 31 L. ed., 205). The suggestion, even if well founded, that under a certain hypothetical state of facts the enforcement of the statute under consideration would operate as a regulation of interstate commerce, affords no ground on which to base an attack upon the validity of the law as an expression of legislative will. *Vance* v. *Vandercook,* 170 U. S., 439 (18 Sup. Ct., 674 ; 42 L. ed., 1100) ; *Tiernan* v. *Rinker,* 102 U. S., 123 (26 L. ed., 103) ; *In re Rahrer,* 140 U. S., 545 (11 Sup. Ct., 865 ; 35 L. ed., 572).

The inquiry whether in the instant case the appellant has or has not, under the facts of the record, violated the law, sheds no light on the other question as to the constitutionality of the law itself. The statute must be construed as written, and, so construing it, we uphold it as not infringing upon any of the provisions of the fundamental law, either state or national. The authorities relied upon by appellant on this point all fall within the category of cases dealt with by this court in *Overton* v. *Vicksburg,* 70 Miss., 558 (13 South. Rep., 226)—cases in which the commodity dealt with was not only a legitimate subject of interstate commerce, but one the sale of which was permitted by the law of the state. In such cases this court, following the decision of the supreme court of the United States—*Robbins* v. *Shelby County,* 120 U. S., 489 (7 Sup. Ct., 592 ; 30 L. ed., 694)—of the federal question involved, held that the imposition of a privilege tax was invalid, because it operated as a regulation of interstate commerce, and hence was within the inhibition of the federal constitution.

But there are two reasons why those authorities are not controlling in the case at bar—first, because this statute is not an attempt to require any license or payment of privilege tax as a condition precedent to following a certain lawful occupation or ·calling. It does not attach any conditions, limitations, burdens, or restrictions upon the doing of a lawful act, but undertakes to prevent the doing of an unlawful one. Second, because the article or commodity dealt with, while a recognized subject of interstate commerce, so that its importation cannot lawfully be prevented—constrained to follow doubtingly the authoritative utterance of the majority of the court in *Bowman* v. *R. R. Co.,* 125 U. S., 465 (8 Sup. Ct., 689, 1062; 31 L. ed., 700), and *Leisy* v. *Hardin,* 135 U. S., 100 (10 Sup. Ct., 681; 34 L. ed., 128)—is an article the sale of which, after importation, may be legally forbidden. Since the enactment by congress of the act of August 8, 1890, commonly called the "Wilson act," intoxicating liquor imported into a state becomes, immediately upon arrival, subject to the law of such state, so that the sale there, if forbidden by the law of such state, is unlawful, though made by the importer and in the original package. Judson, Inter. Com., 18. "Congress has now spoken, and declared that imported liquors or liquids shall, upon arrival in a state, fall within the category of domestic articles of a similar nature." *In re Rahrer,* *supra.* "Congress did not use terms of permission to the state to act, but simply removed an impediment to the enforcement of the state laws in respect to imported packages in their original condition, created by the absence of a specific utterance on its part. It imparted no power to the state not then possessed, but allowed imported property to fall at once upon arrival within the local jurisdiction." *Id.* "It has been settled that the effect of the act of congress is to allow the statutes of the several states to operate upon packages of ·imported liquor before sale." *Rhodes* v. *Iowa,* 170 U. S., 419 (18 Sup. Ct., 664; 42 L. ed., 1088). Hence, all sales of intoxicating liquors are governed by

the state law. If in the particular place the sale be permitted, the seller must comply with the requirements of the law; if forbidden, the sale is unlawful, no matter by whom made, under what circumstances, or whether the liquor be imported or domestic.

The only question remaining for consideration is whether, under the facts of the case, appellant is guilty of the offense charged. Did he, acting as agent in a place where all such sales were prohibited, assist in effecting sale of whisky? There are no controverted facts. The proof is this: Appellant is a citizen of Louisiana, and, either as partner or employe, conducts a retail whisky business in that state. In the prosecution of his business he visits frequently the city of Brookhaven, in this state, in which, being in Lincoln county, the sale of intoxicating liquors is prohibited by law. He solicits and takes orders for whisky, which is delivered in Louisiana to an express company for transportation and delivery to the purchaser. Appellant agrees with the purchaser as to quantity, quality, and price of whisky ordered, and collects the purchase price thereof in money before the whisky is delivered, and even before the order is forwarded. It will be noted that the entire transaction is closed in this state and at the time of the receipt of the order, save only the actual delivery of the whisky. Undoubtedly this is acting as agent of the seller in effecting a sale. Without his active 'intervention no sale could be consummated. He acts without any submission of orders for approval, but conducts all negotiations, collects the purchase price, and directs the delivery. It is idle to quibble over where the delivery in a strict legal sense occurred, whether in this state or Louisiana. The question of appellant's guilt under this statute is not affected by that point. He is not indicted for making a sale, but for acting as agent of the seller and assisting in effecting a sale. See, as shedding light on this branch of the subject, *State* v. *Cullins,* 53 Kan.,105 (36 Pac. Rep., 56; 24 L. R. A., 212); *State* v.

*Ascher* (Conn.), 7 Atl., 822; *State* v. *Delamator, supra; Starace* v. *Rossi,* 69 Vt., 303 (37 Atl., 1109); *Backman* v. *Wright,* 27 Vt., 187; *Westheimer* v. *Weisman* (Kan. Sup.), 57 Pac. Rep., 969; *Taylor* v. *Pickett,* 52 Iowa, 467 (3 N. W., 514).

A sale of intoxicating liquor was made. Appellant assisted in effecting that sale, and acted as agent of the seller in this state at a place "in which the sale of such liquor is prohibited by law." This constitutes the specific offense dealt with by this particular statute, and every element of appellant's guilt is plainly shown. The argument made in behalf of appellant, that his conviction cannot be upheld, because the sale was incomplete until delivery and that delivery was made beyond the borders of the state, was, under slightly different circumstances, successfully interposed in *Pearson* v. *State,* 66 Miss., 512 (6 South. Rep., 243; 4 L. R. A., 835), decided in April, 1889. But as a remedy for this evil, and to supply the omission in the law thus called to its attention, the legislature in February, 1890, passed Laws 1890, ch. 62, p. 71, which now constitutes Code 1892, § 1604, thus closing effectually this avenue of escape.

*Affirmed.*