MARATHON OIL COMPANY, APPELLANT, *v.* BD. OF ZONING
ADJUSTMENT, APPELLEE.

[Cite as Marathon Oil Co. v. Bd. of Zoning
Adjustment (1975), 44 Ohio App. 2d 402.]

(No. 75AP-77—Decided June 30, 1975.)

*Mr. Frederick J. Simon,* for appellant.
*Mr. James J. Hughes, Jr.,* city attorney, *Mr. Daniel W.
Johnson,* city prosecutor, *Mr. Thomas A. Bustin* and *Mr.
Robert A. Bell,* for appellee.

WHITESIDE, J.   Marathon Oil Company appeals from
a judgment of the Franklin County Court of Common
Pleas affirming an order of the Board of Zoning Adjust-
ment of the city of Columbus, which in turn affirmed an or-
der of the director of the department of development of the
city of Columbus to raze an abandoned service station lo-
cated at 865 East Livingston Avenue.

Marathon has not set forth specific assignments of
error denominated as such but has set forth seven unlabel-
ed contentions, which we assume constitute the assign-
ments of error and will be referred to as such hereinafter,
which read as follows:

"I. Columbus City Codes, Section 3379.14(a) is con-
trary to law on the subject of nuisances.

"II. Columbus City Codes, Section 3379.14(a) is contrary to law as it is not based upon public health, safety or welfare.

"III. Columbus City Codes, Section 3379.14(a) is contrary to law for the reason that it summarily declares a service station building to be a nuisance merely because of its being vacant for six (6) months without the question of nuisance being determined either in fact or in law.

"IV. Columbus City Codes, Section 3379.14(a) is unconstitutional as to Article 18(3) of the Ohio Constitution.

"V. Columbus City Codes, Section 3379.14(a) violates the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States.

"VI. There is conflict of decision of two (2) Courts of Common Pleas of Franklin County.

"VII. Columbus City Codes, Section 3379.14(a) is unlawful and unconstitutional because it is vague, arbitrary and unreasonable."

The sixth assignment of error is not well taken for the reason that a conflict in decisions between two judges of the same court does not constitute error, the issue being merely whether the court erred in the judgment appealed from. The other six assignments of error raise essentially the same issue, the constitutionality of Columbus Code (C. C.) 3379.14, and will be considered together. The trial court found that the decision of the Board of Zoning Adjustment "is supported by reliable, substantial and probative evidence, and is not contrary to law." The trial court made no specific finding as to whether the decision, or the ordinance upon which it was founded is unconstitutional, illegal, arbitrary, capricious, or unreasonable, which are specific considerations set forth in R. C. 2506.04. However, we assume the finding that the decision is not contrary to law is intended to constitute these findings; the only real issue raised being one of constitutionality, as is reflected by the transcript filed by the Board of Zoning Adjustment in the Court of Common Pleas. C. C. 3379.14(a) reads as follows:

"If any service station shall become abandoned, in

the manner provided herein, such service station is declared to be a public nuisance by reason of continued vacancy, the structure and grounds result in lack of reasonable or adequate maintenance thereby causing deterioration and blighting influence on nearby properties, and thereby depreciating the enjoyment and use of the property in the immediate vicinity to such an extent that it is harmful to the public health, welfare, safety or morals of the community in which such structure is situated and shall be abated. An 'abandoned service station' is defined as a service station which has ceased operation or is closed to the public for at least six (6) months in any twelve (12) month period, except that a closure caused by street or other public improvement shall not be considered abandonment as defined herein. The owner of the service station or related structures shall cause such building or structures and all related items such as sign and pump islands to be removed not later than 15 days after the six (6) month closure period, except that a closure caused by street or other public improvement or national emergency shall not require the removal of the structure as previously stated.''

The only issue to be determined by the director of the department of development as provided by C. C. 3379.14 (c) is whether the service station has become abandoned as defined by C. C. 3379.14(a). There is no provision for a factual determination of whether a service station found to be an abandoned service station is in fact a public nuisance. C. C. 3379.14(b) provides:

''The owner or lessee shall install, within seven (7) days of the beginning of the closure period referred to in subsection (a) hereof, wheel blocks across the driveway entrance to the service station to prohibit unauthorized vehicle parking or abandonment of motor vehicles, and shall during the closure period cut all grass, remove all rubbish and weeds and continue such maintenance as may be necessary to prevent the building or structures from deteriorating into a stage of disrepair.''

The evidence indicates that C. C. 3379.14(b) has been

fully complied with by Marathon. C. C. 3379.14(a) declares abandoned service stations to be a nuisance *per se* and requires all buildings and structures thereon to be removed summarily, whether or not a public nuisance in fact exists.

The ordinance in question is part of the zoning code of Columbus, and as such constitutes a zoning regulation, rather than a health, safety, or building regulation. As plaintiff points out, the city, in C. C. Chapter 4701, has adopted a procedure in the building code for the abatement of buildings which constitute a nuisance, which includes an opportunity for a hearing on the question of the existence of a public nuisance. C. C. 4701.02(a). Furthermore, C. C. 4701.01(a) defines "public nuisance" to include any structure which:

"* * * by reason of the condition in which the same is permitted to be or remain, shall or may endanger the health, life, limb or property, or cause any hurt, harm, inconvenience, discomfort, damage or injury to any one or more persons in the City of Columbus in any one or more of the following particulars:

"(1) By reason of being detrimental to the general health of the community.

"(2) By reason of being a fire hazard.

"(3) By reason of being harmful or detrimental to the public health, morals, safety and general welfare of the community.

"(4) By reason of continued vacancy, the structure and grounds result in lack of reasonable or adequate maintenance, thereby causing deterioration and blighting influence on nearby properties, and thereby depreciating the enjoyment and use of the property in the immediate vicinity to such an extent that it is harmful to the public health, welfare, safety or morals of the community in which such structure is situated."

As indicated, the owner of property, other than a service station, is entitled to a hearing on the question of the existence of a public nuisance, as defined by C. C. 4701.01; whereas, owners of abandoned service stations, pursuant to C. C. 3379.14(a), have their property declared by legis-

lative fiat to be a public nuisance, to be abated by the removal of buildings and structures, without any opportunity for a hearing upon the question of the existence of the nuisance. Such distinction is hardly consistent with the equal protection of the law.

The basic issue herein, however, is one of due process. That is, whether or not the ordinance in question is unconstitutional because it fails to afford the owner of an abandoned service station with due process of law, with respect to the question of the existence of a public nuisance. In the syllabus of *Solly* v. *Toledo* (1966), 7 Ohio St. 2d 16, the Supreme Court set forth certain guidelines in its syllabus with respect to abatements of public nuisances, as follows:

"1. A charter city may enact legislation, not in conflict with general laws, authorizing the summary abatement of public nuisances and the destruction of property used in maintaining such nuisances when reasonably necessary to effectuate their abatement.

"2. No legislation can authorize the destruction of private property as a public nuisance unless such property comes within a valid legislative definition (by statute or ordinance) of a public nuisance or is expressly proscribed by valid legislation (*i. e.*, by statute or ordinance).

"3. Anyone who destroys or injures private property in abating what legislative or administrative officials have determined to be a public nuisance does so at his peril, where there has been neither a previous judicial determination that such supposed nuisance is a public nuisance nor even an opportunity provided to the owner for an administrative hearing (with a judicial review thereof) on the question as to whether there is a public nuisance.

"4. In such an instance, when sued by the owner, the one destroying the property may be held liable for damages caused by its destruction unless he alleges and proves and the trier of the facts finds that what he destroyed was a public nuisance and that its destruction was reasonably necessary for abatement of that nuisance.

"5. The owner of property is under no duty to bring an action to enjoin its threatened wrongful destruction, and failure to do so will not prevent recovery for damages caused by such destruction."

From *Solly*, it would appear that if the city, or an officer thereof were to have destroyed, pursuant to C. C. 3379.14(a), an abandoned service station, the owner would be entitled to damages caused by the destruction, unless the city or the administrative officer could prove that the structure destroyed "was a public nuisance and that its destruction was reasonably necessary for abatement of that nuisance." See also *Jackson* v. *Columbus* (1974), 41 Ohio App. 2d 90.

C. C. 3379.14(a) is not clearly phrased in that it first states that an abandoned service station is "a public nuisance by reason of continued vacancy," but then goes on to make what would ordinarily be factual findings, stating:

"* * * the structure and grounds result in lack of reasonable or adequate maintenance thereby causing deterioration and blighting influence on nearby properties, and thereby depreciating the enjoyment and use of the property in the immediate vicinity to such an extent that it is harmful to the public health, welfare, safety or morals of the community in which such structure is situated * * *."

The ordinance would read more fluently and more reasonably if it were worded as follows:

"* * *such service station is declared to be a public nuisance [if] by reason of continued vacancy, the structure and grounds result in lack of reasonable or adequate maintenance thereby causing deterioration and blighting influence on nearby properties, and thereby depreciating the enjoyment and use of the property in the immediate vicinity to such an extent that it is harmful to the public health, welfare, safety or morals of the community in which such structure is situated and shall be abated.* * *"

The insertion of the single word "if" would cure the objection to the constitutionality of the ordinance that plaintiff raises, and might well be the construction to be placed upon such section by this court were it not for the

fact that C. C. 3379.14(c) clearly limits the determination of the director of the department of development to the issue of whether the station has been abandoned and makes no provision for a hearing on the question of whether or not a public nuisance exists.

The courts have frequently protected property rights against arbitrary municipal legislative interference; e. g. City of Akron v. Chapman (1953), 160 Ohio St. 382; Dragelevich v. City of Youngstown (1964), 176 Ohio St. 23; Gates Co. v. Housing Appeals Board (1967), 10 Ohio St. 2d 48; and Pickwick Realty Co. v. Housing Appeals Bd. (1968), 15 Ohio St. 2d 214. Although these cases are not directly in point, they demonstrate that an ordinance may not arbitrarily deprive the owner of his property without due process of law. Particularly pertinent is the statement in the opinion by Justice Schneider in Gates, declaring unconstitutional an ordinance requiring the installation of additional bathrooms and kitchen sinks in a tenement building. It reads, at page 52:

"To hold otherwise would be to permit the compulsive improvement of any real property merely upon a legislative finding that the improvement is required to promote the public health, safety or morals, rather than upon a factual determination that the continued use of the property without improvement immediately and directly imperils the public health, safety or morals."

This is exactly what the city attempts in this instance, the "improvement" being the razing of existing structures determined to be necessary by a legislative finding and not upon a factual determination that the continued use of the property without the razing of the structures immediately and directly imperils the public health, safety, morals, or welfare.

There is no evidence in the record indicating that the abandoned service station involved constitutes a nuisance in fact; rather, all the evidence is to the contrary, indicating compliance with C. C. 3379.14(b). The ordinance, however, declares the abandoned service station to be a nuisance *per se*, and orders that the structures be razed re-

gardless of whether they constitute a nuisance in fact. Although it might be quite reasonable to require the removal of certain of the structures and fixtures utilized by an operating service station, such as the pumps and other accessories, it is unreasonable to require the razing of the service station building itself without a factual determination being first made that such structure constitutes a public nuisance which can be abated only by removal. It is a matter of common knowledge that "abandoned" service station buildings are frequently converted to other uses after the premises ceased to be used as a service station. The ordinance in question would permit such conversion within six months after the service station is closed, but not thereafter.

Like the ordinance herein, the ordinance in *Solly* provided no opportunity to the owner of the property to be destroyed for a hearing on the question as to whether there was a public nuisance. *Solly* did not expressly declare such ordinance to be unconstitutional but, rather, determined that the property owner would be entitled to damages for the destruction of his property, unless the city or its officers could prove that a public nuisance in fact existed and that a destruction of the building was reasonably necessary for an abatement of that nuisance. We do not feel that Marathon should be relegated to such a remedy in this case, but, rather, relief should be granted from the operation of the ordinance in question. It is unreasonable, arbitrary, and unconstitutional for a failure to afford the owner of a service station an opportunity to be heard, prior to its destruction, upon the question of whether or not such service station constitutes a public nuisance, with the destruction of the buildings thereon being reasonably necessary to effectuate an abatement of such nuisance. By failing to provide such a remedy, the ordinance deprives Marathon of its property without due process of law.

Accordingly, the first, second, third, fifth, and seventh assignments of error are well taken. The fourth assignment of error is not well taken for the reason that there is no

410

existing conflict problem arising under Section 3, Article XVIII of the Ohio Constitution.

For the foregoing reasons, the fourth and sixth assignments of error are overruled, and the other five assignments of error are sustained, and the judgment of the Franklin County Court of Common Pleas is reversed. Rendering the judgment that that court should have rendered, the order of the Board of Zoning Adjustment affirming the order of the director of the department of development is reversed and vacated, and final judgment is entered, vacating the order of the director.

*Judgment reversed.*

HOLMES and REILLY, JJ., concur.