# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-01955-SCT

*TIMMY TRAINER, ANGELA TRAINER, SD AMUSEMENTS OF MISSISSIPPI, INC. AND MISSISSIPPI AMUSEMENT OPERATORS' ASSOCIATION*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/05/2004 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JOHN H. COX, III |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY BERRYHILL |
| | THOMAS HENRY MUELLER |
| | MEREDITH M. ALDRIDGE |
| NATURE OF THE CASE: | CIVIL - UNCONSTITUTIONAL STATUTE |
| DISPOSITION: | AFFIRMED - 04/06/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     This civil action against the State of Mississippi, which challenges the constitutionality of certain criminal statutes, arises from the arrest of one of the appellants,[1]

---

[1]In addition to Timmy Trainer, the other appellants are Angela Trainer, SD Amusements of Mississippi, Inc., and Mississippi Amusement Operators' Association. Angela Trainer is Timmy Trainer's wife. She is identified in the record as co-owner and co-operator of Mac's Grocery. SD Amusements of Mississippi, Inc., is a for-profit corporation

Timmy Trainer, who was charged with possession of illegal gambling machines. The machines in question were seized from Trainer's place of business and partially disassembled. Money was also removed from the machines and seized. Trainer relied on profit from the machines for part of his livelihood. Trainer claims the machines were not illegal gambling machines. He brought this suit to challenge the constitutionality of the criminal statutes under which he was arrested and under which the machines and money were seized. Trainer maintains the statutes are vague and ambiguous. Trainer also claims violations of his property rights and his right to due process of law, as he was provided no hearing. The trial court granted the State of Mississippi's motion to dismiss, finding the machines were illegal gambling devices, and that Trainer thus had no property rights in contraband; and, that Trainer had failed to meet his burden of showing that the law was unconstitutional.

---

which has business interests throughout Greenville and Washington County, and which owns and operates video game machines similar to those seized from the Trainers' place of business. At the hearing on the motion to dismiss, Trainer testified he was employed by SD Amusements. Trainer also testified that he owned and operated Mac's Grocery. Mississippi Amusement Operators' Association is a not-for-profit association of Mississippi owners and operators of video game machines similar to the ones seized from the Trainers' place of business. It is not clear from the record whether Trainer was a member of Mississippi Amusement Operators' Association. For the sake of clarity, we will refer to the appellants collectively as "Trainer."

¶2.     Trainer appealed to this Court.  We affirm the trial court's judgment which specifically allowed seizure of these machines under Miss. Code Ann. § 97-33-7 and -17, as we do not find these statutes to be unconstitutional.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶3.     Shortly after Timmy Trainer's purchase of Mac's Grocery[2] in Greenville, a law enforcement search of Trainer's store was conducted pursuant to a warrant, in June, 2002. As a result of the execution of this warrant, law enforcement officials seized four video game machines and the money inside the machines.  Trainer had been operating the store for only a few weeks when the Washington County Sheriff's Department conducted the search.  The warrant described "four video poker machines," which Trainer testified were not the types of machines seized.  In fact, Trainer did not actually own any "video poker" machines.  The seized video games, from which Trainer earns some of his livelihood, have a display similar to those on slot machines, and are known as "Cherry Masters" or "Eight Liners."  Trainer was arrested for possessing illegal gambling devices. When this civil action came before the circuit court, the criminal matter was still pending in county court, and a stay of the criminal case had been issued by the county court judge.  The officers from the sheriff's department removed from the machines on site the mother boards, or "brain boards,"which are circuit boards similar to a computer's CPU.

---

[2]There is some confusion in the record as to the store's actual name.  In his brief, Trainer referred to his store as T and N Grocery, but in his testimony at the hearing on the state's motion to dismiss, he called it Mac's Grocery.

¶4. At the hearing on the State's motion to dismiss, Trainer presented three witnesses, Phillip Lee, Brian Walters, and Ronnie Moore, who had experiences similar to Trainer. Lee, Walters, and Moore all owned bars and clubs which had these game machines which police confiscated and/or destroyed; and, they were not afforded a hearing or a criminal trial. Lee, Walters, Moore, and Trainer do not know where their game machines are being kept or what condition those machines are in. Testimony at the hearing revealed that these arcade-like machines which are common to all four individuals, project electronic displays onto glass screens similar to those on personal computers. The displays themselves resemble spinning reels like those on a traditional slot machine. The player begins the game by inserting money, which generates a certain number of credits, depending on how much money is inserted. The game is played by stopping the spinning reels by pressing buttons, or skill stops, on the front of these video game machines. The object is to line up common symbols on the display to accumulate more credits, which in turn will allow more playing time. Thus, the player "buys" credits by initially inserting money and then attempts to "win" more credits through game play. The machines, which accept both coins and bills, do not give change or return unused credits. Instead, any unused credits become a windfall to the next player. The machines also lack what are commonly called knock-off buttons, a device common to actual slot machines in casinos which reset the game credits to zero, thus allowing the player to be reimbursed for any unused credits. However, concerning the machines which are the subject

4

of today's appeal, if the player has increased the number of credits, the "winnings" cannot be redeemed for value.

¶5.    Trainer filed his complaint for declaratory judgment/relief challenging the constitutionality of the statutory provisions under which he was arrested, naming Washington County as the defendant.  In the original complaint Trainer also claimed violations of the Fourteenth Amendment of the United States Constitution, namely that he was deprived of due process of law and property, and that he was denied equal protection of the laws.  The state Attorney General intervened on behalf of Washington County under Miss. R. Civ. P. 24(d), and filed a motion to dismiss.  Before Trainer filed his response to the motion to dismiss, he filed a motion to amend his complaint for declaratory judgment, requesting that Washington County be deleted as the defendant, and that the State of Mississippi be substituted therefor, since he was challenging the constitutionality of a state statute.  Trainer also requested that the complaint be amended to include another basis of unconstitutionality, namely, that the statute was vague and arbitrary as worded, interpreted and enforced. Washington County filed a response, agreeing that the complaint should be dismissed as to the County.  In its response, the State argued that the trial court should address the State's motion to dismiss before considering Trainer's motion to amend; and, that there was no need to amend the complaint as the State had already intervened.  At a subsequent hearing, the trial court granted both motions to dismiss.  In its order granting the State's motion, the trial court

briefly addressed the issue of vagueness. Trainer filed this appeal from the trial court's dismissal of his complaint.

¶6. In this appeal, Trainer challenges the constitutionality of Miss. Code Ann. § 97-33-7 (making the possession of slot machines illegal), and Miss. Code Ann. § 97-33-17 (making monies exhibited from illegal gambling subject to seizure by the sheriff). Trainer claims he was deprived of a property right in the machines, and profits from these machines, without a hearing to determine if his machines were covered by the statute or if the seizure was valid. Trainer raises only one issue today, but phrases it in two parts, namely, whether sections 99-33-7 and 99-33-17 are unconstitutionally vague, and impermissibly allow seizure of personal property without a hearing, depriving individuals of property rights and due process under the federal and state constitutions.[3]

## DISCUSSION

¶7. This Court has stated the scope of our power of review when interpreting the constitutionality of statutes:

> Without doubt, our constitutional scheme contemplates the power of judicial review of legislative enactments; however, that power may be exercised affirmatively only where the legislation under review be found 'in palpable conflict with some plain provision of the . . . constitution.' Statutes . . . come before us clothed with a heavy presumption of constitutional validity. The

---

[3]A few days before the oral arguments in this case, Trainer, through counsel, submitted a Rule 28(j) letter. See M. R. A. P. 28(j). So that there be no misunderstanding, this Court has also considered the citations of supplemental authorities provided in this letter, which was appropriately submitted according to the Rule, after the briefs were filed with the Court.

party challenging the constitutionality of a statute is burdened with carrying his case beyond all reasonable doubt before this Court has authority to hold the statute, in whole or in part, of no force or effect. When a party invokes our power of judicial review, it behooves us to recall that the challenged act has been passed by legislators and approved by a governor sworn to uphold the selfsame constitution as are we.

*In re T.L.C.*, 566 So.2d 691, 696 (Miss. 1990) (quoting *Hart v. State*, 87 Miss. 171, 39 So. 523, 524 (1905) (internal citations omitted)).

## I. WHETHER THE STATUTES MAKING IT A CRIME TO POSSESS GAMBLING MACHINES ARE UNCONSTITUTIONALLY VAGUE.

¶8. Trainer was arrested under Mississippi's criminal laws which make it a crime for any person to possess, display, or operate any "slot machine, pinball machine, or similar device or devices" except where the statute specifically allows it, such as in legal casinos. Miss. Code Ann. § 97-33-7(1) (Rev. 2000).

> (1) It shall be unlawful for any person . . . to have in possession, own, control, display, or operate any . . . slot machine, pinball machine, or similar device or devices. . . . Any slot machine . . . which delivers, or is so constructed as that by operation thereof it will deliver to the operator thereof anything of value in varying quantities, in addition to the merchandise received, and any slot machine . . . that is constructed in such manner as that slugs, tokens, coins or similar devices are, or may be, used and delivered to the operator thereof in addition to merchandise of any sort contained in such machine, is hereby declared to be a gambling device, and shall be deemed unlawful under the provisions of this section. Provided, however, that pinball machines which do not return to the operator or player thereof anything but free additional games or plays shall not be deemed to be gambling devices, and neither this section nor any other law shall be construed to prohibit same.

*Id.* This statute provides that certain illegal gambling devices include slot machines that "deliver to the operator thereof anything of value in varying quantities, in addition to the

7

merchandise received" and those that both use and deliver "slugs, tokens, coins or similar devices . . . to the operator thereof in addition to merchandise of any sort contained in such machine." *Id.* The statute also carves out exceptions for antique coin machines defined under another civil statute, § 27-27-12. *Id.* Our Court of Appeals has stated that prohibited machines are those that "(1) are operated by coin, token, or other consideration, and (2) dispense a product with (3) the possibility of dispensing additional items at varying quantities." *Miss. Gaming Comm'n v. Six Video Gamb. Devices*, 792 So.2d 321, 324 (Miss. App. 2001). On the other hand, the Mississippi Gaming Control Act defines slot machine more specifically:

> (ff) "Slot machine" means any mechanical, electrical or other device, contrivance or machine which, upon insertion of a coin, token or similar object, or upon payment of any consideration, is available to play or operate, the play or operation of which, whether by reason of the skill of the operator or application of the element of chance, or both, may deliver or entitle the person playing or operating the machine to receive cash, premiums, merchandise, tokens or anything of value, whether the payoff is made automatically from the machine or in any other manner. The term does not include any antique coin machine as defined in Section 27-27-12.

Miss. Code Ann. § 75-76-5(ff). The Court of Appeals also considered this civil statute in *Six Elec. Video Gamb. Devices*, 792 So.2d at 326. However, our holding today is distinguishable from this Court of Appeals case, as our holding is limited to the two statutes raised on appeal – those found under title 97 of the Mississippi Code. Finally, any machine falling under the category of slot machine or gambling device is subject to seizure by law enforcement officials. Miss. Code Ann. § 97-33-17(1). Except where state law otherwise

8

provides, "all monies staked or betted, shall be liable to seizure by any sheriff, constable, or police officer, together with all the appliances used or kept for use in gambling . . . and all appliances seized shall be destroyed . . . ." *Id.* It is important to note that the statute also states "that pinball machines which do not return to the operator or player thereof anything but free additional games or plays shall not be deemed to be gambling devices, and neither this section nor any other law shall be construed to prohibit same." Miss. Code Ann. § 97-33-7(1).

¶9.     The basic legal question is whether the statutes are unconstitutional because of vagueness in the description of what constitutes a slot machine. Trainer argues that because the statute is vague, he could not know if his devices were indeed illegal under the statute and thus, he was due a hearing to determine if they were illegal. Trainer argues that without this hearing, he was deprived of a property right in the machines and the income these machines produced for him. Trainer's argument is that the vague description of slot machines and gambling devices prevents law enforcement officials from possessing the knowledge needed to discern which machines are legal and which are not. Trainer thus argues those officials are empowered with the authority to confiscate and destroy the personal property of individuals who are never afforded a hearing.

### A.     This Court's decision in *Henson*, and vagueness.

¶10.    This Court has had occasion to consider a case similar to today's case. In *Miss. Gaming Comm'n v. Henson*, 800 So.2d 110 (Miss. 2001), we found two game machines to

9

be illegal gambling devices.[4] The question before the Court in **Henson** was not the constitutionality of the statute, but rather what was required for a machine to be considered a "slot machine" under Section 75-76-5(ff) *before* the machine could be subject to seizure and destruction under Section 97-33-7(1). As previously mentioned, today's holding applies only to Sections 97-33-7 and -17, and is therefore distinguishable from **Henson**.

¶11.    The Fifth Circuit recently dealt with vagueness of statutes, stating that "[a]n enactment is void for vagueness if its prohibitions are not clearly defined." **J & B Entertainment, Inc. v. City of Jackson**, 152 F.3d 362, 367 (5th Cir. 1998) (quoting **Grayned v. City of Rockford**, 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). To determine whether a statute is vague "we view the law from the standpoint of a person of ordinary intelligence." **Id.** This Court has recognized the established, guiding legal principle that an ordinance or regulation "cannot be enforced unless it provides clear notice and sufficiently definite warning of that which is prohibited, and that which is allowed. The authorities for this proposition abound." **Mayor & Bd. of Aldermen, City of Clinton v. Welch**, 888 So.2d 416,

---

[4]One of the game machines in **Henson** was actually a "Cherry Master Video," supposedly similar to the game machines in today's case. **Henson** provides a detailed description of the game machine, which is essentially an upright arcade version of a slot machine, and which is also played in a similar fashion. **Henson**, 800 So.2d at 113-14. The main difference between the machine in **Henson** and the machines in our case today is the absence of "knock-off" buttons in the machines which are the subject of the case before us today. However, in **Henson**, these knock-off buttons were not the determining factor concerning the machines' illegality.

421 (Miss. 2004). The "restriction[s] must be reasonably clear, enabling a citizen to understand what is allowed, and what is not." *Id.* at 420.

### B. The potential danger of arbitrary enforcement of the criminal statutes.

¶12. Trainer expresses concerns that the criminal statutes at issue do not give law enforcement officials clear guidance as to what game machines are subject to seizure. Trainer points out that the Mississippi Gaming Commission, allegedly not understanding the statute as clear and unambiguous, provides its own definition of a gambling game in that agency's regulations by providing that such a game is "any banking or percentage game played with cards, with dice or with any mechanical, electromechanical or electronic device or machine for money, property, checks, credit or any representative of value." Miss. Gaming Comm., Reg. VII., A. (10) (2005). The Commission later amended this definition. Trainer argues that if the statute were clear and unambiguous, there would be no need for the Commission to provide definitions and amended definitions. Likewise, the record reveals that the law enforcement officials in today's case had difficulty with defining an illegal game machine under the criminal statutes. However, our role does not involve an attempt to rewrite the statute. Instead, we must decide if this statute provides "clear notice and sufficiently definite warning of that which is prohibited, and that which is allowed." *Welch*, 888 So. 2d at 421.

11

## C.    A closer look at sections 97-33-7, -17.

¶13.    Again, Trainer was arrested under the criminal statute. We thus find the answer to the issue at hand in section 97-33-7. With the exceptions of antique coin machines and where the law specifically allows gambling, such as in legal casinos, the criminal statute makes it illegal for a person to possess a device which "deliver[s] to the operator thereof anything of value in varying quantities, in addition to the merchandise received," or one which "is constructed in such manner as that slugs, tokens, coins or similar devices are, or may be, used and delivered to the operator thereof in addition to merchandise of any sort contained in such machine." Miss. Code Ann. § 97-33-7(1). Given that the law treats a credit as whatever cost is required to play one credit, the possibility of winning several credits on any one spin of the virtual reels certainly awards things in varying quantities. Thus there is a clear exception for vending machines, such as a snack or soft-drink machine, which always deliver the same quantity of a product for one fixed amount of money. In the same way that a "true" slot machine, such as those found in legal casinos, might deliver varying quantities of coins or tokens to a player, the machines in today's case can deliver varying quantities of credits to a player, each worth one coin or token initially required for play. Whether a player receives several dozen coins or several dozen credits, the player is receiving, in varying quantities, something of value. The question of a credit or a coin does not lay this issue to rest in Trainer's favor. Legal slot machines may also commonly be operated to deliver only credits to a player who can choose to later "cash in" these credits. As for the exception that "pinball

12

machines which do not return to the operator or player thereof anything but free additional games or plays shall not be deemed to be gambling devices," one can easily see the difference between an additional game, such as one more round or turn, and an entire additional credit, the value of which is determined by the initial cost of play. We agree with the Court of Appeals that illegal gambling machines under the criminal statute are those that "(1) are operated by coin, token, or other consideration, and (2) dispense a product with (3) the possibility of dispensing additional items at varying quantities." *Six Elec. Video Gamb. Devices*, 792 So.2d at 324.

¶14. Trainer draws our attention to another part of title 97, which states, "[a]ll laws made or to be made for the suppression of gambling or gaming, are remedial and not penal statutes, and shall be so construed by the courts." Miss. Code Ann. § 97-33-29. Therefore, Trainer asserts that Sections 97-33-7, -17 are civil in nature, and not criminal. Looking at the same penal/remedial language from this statute, the Fifth Circuit declined to equate "remedial" with regulatory and "penal" with criminal, and therefore refused to reverse the criminal convictions. *U.S. v. Stewart*, 205 F.3d 840, 843 (5th Cir. 2000).

> In further support of their argument that violation of a state gambling law is not "criminal" . . . Appellants rely on § 97-33-29 of the Mississippi criminal code, which provides: "All laws made or to be made for the suppression of gambling or gaming, are remedial and not penal statutes, and shall be so construed by the courts." This particular provision has not been interpreted in modern case law in this context, but the Mississippi Supreme Court in 1903, in *Fuller v. State* held - consistent with even earlier opinions - that the provision was intended to clarify that criminal laws prohibiting gambling were to be construed liberally, as an exception to the normal rule of lenity, requiring strict construction of criminal statutes in favor of the accused. In *Fuller*, the

13

court held that the predecessor to § 97-33-1 authorized imprisonment in addition - not just as an alternative - to a fine and stated: "We are fortified in this position by that provision of our criminal law which says that all laws in reference to gaming are remedial, and are to be construed liberally - not liberally in favor of the culprit, but for the suppression of vice."

*Id.* (relying on *Fuller v. State*, 35 So. 214, 215 (Miss. 1903); *Cain v. State*, 21 Miss. 456 (1850)). The Fifth Circuit further stated that "[t]he Mississippi Supreme Court, in construing 'that provision of our *criminal* law' clarified that the word 'remedial' called for gaming laws to be construed liberally *against* the criminal; it has never held that the provision removed all prohibitory gambling laws from the criminal code." *Id.* (emphasis in original). Also, we emphasize that our constitutional analysis of a statute is the same whether the statute under scrutiny is criminal or civil. We have long held that the Constitution applies to every statute. *Hollins v. State,* 90 So. 630, 631 (Miss. 1922). Unable to see the distinction between the authority of criminal case law and that of civil case law when analyzing the constitutionality of a statute, the Court, in *Hollins*, held that "[t]he proper construction of the statute, or whether it shall be strictly or liberally construed, is not the question, but whether the Constitution applies to all statutes alike, whether civil or criminal. And we hold that it does." *Id.*

¶15. The final question in our analysis is whether Trainer has met his burden of showing that these statutes are unconstitutionally vague. Keeping in mind that statutes come before us "clothed with a heavy presumption of constitutional validity," Trainer must show the statute in question here is "in palpable conflict with some plain provision of the constitution."

14

***In re T.L.C.***, 566 So.2d at 696 (quoting ***Hart v. State***, 87 Miss. 171, 176, 39 So. 523, 524 (1905)). Trainer's burden is to carry the case beyond all reasonable doubt. *See **In re T.L.C.**,* 566 So.2d at 696. If Trainer can show this Court beyond all reasonable doubt he is being deprived of his property without due process of law because the statute is unconstitutionally vague, he should prevail. However, Trainer has not met that burden. We clearly find that, as written, the criminal statutes, Sections 97-33-7, -17, are not too broad in their description of what causes a video game to be an illegal slot machine. From the criminal statutes, as they currently exist, a person with ordinary intelligence would have little difficulty determining what exactly is prohibited and what is not. For these reasons, we find this issue to be without merit.

## II. WHETHER MISSISSIPPI'S GAMING-DEVICE STATUTES DEPRIVE OWNERS OF PROPERTY WITHOUT DUE PROCESS OF LAW.

¶16. Trainer also contends he was deprived of property without due process of law because there was no hearing. The federal constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV(1). The Mississippi Constitution's counterpart provision reads, "[n]o person shall be deprived of life, liberty, or property except by due process of law." MISS. CONST. ART. 3, § 14. The gambling laws in Mississippi however do not extend a property right to illegal gambling machines. Miss. Code Ann. § 97-33-7(2).

> (2) No property right shall exist in any person, natural or artificial, or be vested in such person, in any or all of the devices described herein that are not

15

exempted from the provisions of this section; and all such devices are hereby declared to be at all times subject to confiscation and destruction, and their possession shall be unlawful, except when in the possession of officers carrying out the provisions of this section. It shall be the duty of all law-enforcing officers to seize and immediately destroy all such machines and devices.

*Id.* As to Trainer's argument that he has been deprived of property without due process of law, we have examined how other jurisdictions have addressed this issue. With exceptions made in instances of health risks, there is abundant case law, firmly rooted in legal history, across numerous jurisdictions, which absolutely requires a hearing to determine whether property is illegal or is a nuisance before it can be destroyed. *See e.g., **South Dakota Dept. of Health v. Owen***, 350 N.W.2d 48, 51 (S.D. 1984); ***State v. 25 Slot Machines***, 163 W.Va. 459, 459, 256 S.E.2d 595, 596 (W.Va. 1979); ***In re Destruction of One Gambling Device***, 16 Wash.App. 859, 863, 559 P.2d 1003, 1005 (Wash. Ct. App. 1977); ***State v. Madere***, 344 So. 2d 29, 30 (La. Ct. App. 1977); ***Marathon Oil Co. v. Board of Zoning Adjustment***, 44 Ohio App.2d 402, 407, 339 N.E.2d 856, 860 (Ohio App. 1975); ***In re Teletype Mach. Co. 33335***, 126 Pa.Super. 533, 534, 191 A. 210, 211 (Pa. Super. 1937); ***State v. Falgren***, 176 Minn. 346, 347, 223 N.W. 455, 455 (Minn. 1929); ***Garland Novelty Co. v. State***, 71 S.W. 257, 259 (Ark. 1902); ***Bobel v. People***, 173 Ill. 19, 24, 50 N.E. 322, 323 (Ill. 1898). This has long been the rule, clearly consistent with basic principles of due process. "If there is no notice and hearing before the seizure and destruction of the property, then the owner is entitled to a hearing after the destruction to determine whether the property was in fact a nuisance, and whether such destruction was, in fact, necessary to abate the nuisance." ***City***

16

*of Rapid City v. Boland*, 271 N.W.2d 60, 67-68 (S.D. 1978) (relying on *North American Cold Storage Co. v. Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908)) (internal citations omitted). One state court has expressly held that where doubt exists as to whether the use to which the device may be put is lawful or entirely unlawful, "then the destruction of the device without notice and opportunity for a hearing is frowned upon as violative of due process of law; particularly is this true as to devices which, although capable of use for gambling purposes, actually may be used for lawful purposes." *Prendergast v. Dwyer*, 88 Idaho 278, 285, 398 P.2d 637, 640-41 (1965). Again, as today's factual scenario does not create any violation of Trainer's due process rights, this question is not properly before us to resolve.

¶17.    The trial court in today's case relied on *Stevens v. State*, 225 Miss. 48, 82 So. 2d 645 (1955) and *Clark v. Holden*, 191 Miss. 7, 2 So. 2d 570 (1941) to support that the mere possession of an illegal gambling device, such as a slot machine, is enough for a violation. Naturally, if possession alone of certain objects is a crime, there is no property interest in those objects. If the machines in question clearly fall under the description of "illegal gambling devices," it is without question that no property right existed in them. Trainer argues that because the statute is vague, he could not know if his devices were indeed illegal under the statute and thus was due a hearing to determine if they were. Trainer argues that without this hearing, he was deprived of a property right in the machines and the income they

17

produce to him. This issue then hinges entirely on the vagueness of the statutes at issue in this case.

¶18. The trial court did not delve into a deep analysis of vagueness, but pointed out that for Trainer to prevail on the claim that Section 97-33-7 is facially unconstitutional, he must establish that there is no set of circumstances in which the law could be applied constitutionally. *Barnes v. Miss.*, 992 F.2d 1335, 1342 (5th Cir. 1993), *cert. denied*, 510 U.S. 976, 114 S. Ct. 468, 126 L.Ed. 2d 419 (1993). The mere possibility that the law "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Webster v. Reproductive Health Services*, 492 U.S. 490, 524, 109 S. Ct. 3040, 106 L.Ed. 2d 410 (1989). Trainer's challenge to this statute is not that it is facially unconstitutional, but rather that it is unconstitutionally vague. Because we find the statute in question is not unconstitutionally vague, it follows that Trainer was not deprived of property without due process of law. Trainer was not due a hearing on whether his gaming machines were actually gambling devices precisely because the statute is not constitutionally vague as written. This issue is without merit.

### CONCLUSION

¶19. Trainer has not met his burden of showing that, as currently written, the criminal statute in question, and the only one Trainer argues, fails to provide a clear and adequate definition of what is allowed and what is proscribed with regard to video game machines for a person with ordinary intelligence. In the application of the law to the facts before us now,

18

we cannot find there is no possibility for the statutes to operate constitutionally. For the foregoing reasons, we do not find this statute to be unconstitutionally vague, thus allowing seizure of the devices and monies in this case.

¶20.   In sum, for the reasons stated, we find the trial court properly granted the State's motion to dismiss. Thus, the final judgment entered by the Circuit Court of Washington County is affirmed.

¶21.   **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**