**UNITED STATES of America; State of Michigan, Plaintiffs,**

**United States of America, Plaintiff-Appellee,**

v.

**Frederick DAKOTA; Sybil Dakota; the Keweenaw Bay Indian Community, Defendants-Appellants.**

No. 85–1568.

United States Court of Appeals, Sixth Circuit.

Argued May 6, 1986.

Decided July 18, 1986.

Rehearing and Rehearing En Banc Denied Sept. 4, 1986.

Hunter H. Watson, Laurium, Mich., Garfield W. Hood, L'Anse, Mich., Douglas B.L. Endreson (argued), Sonosky, Chambers & Sachse, Washington, D.C., for defendants-appellants.

John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Daniel M. LaVille, Asst. U.S. Atty. (argued), for plaintiffs.

Louis J. Caruso, Sol. Gen., State of Mich., for amicus curiae.

Before KENNEDY and MILBURN, Circuit Judges, and JOINER, Senior District Judge *.

MILBURN, Circuit Judge.

Defendants Frederick and Sybil Dakota ("the Dakotas") and the Keweenaw Bay Indian Community ("KBIC" or "the Tribe") appeal from the judgment of the district court granting the United States' request for declaratory and injunctive relief prohibiting, as a violation of federal law, the commercial casino gambling operations conducted by the Dakotas on land under the control of the KBIC. Because we agree with the district court that the Dakotas' commercial casino operations violate Michigan law and the Organized Crime Control Act of 1970, 18 U.S.C. § 1955, we affirm.

## I.

The KBIC is a federally recognized Indian tribe, organized under the terms of the Indian Reorganization Act of 1934, 25 U.S.C. §§ 476–479. The governmental authority of the KBIC is vested in the democratically elected Tribal Council, the powers of which are set out in the Tribe's constitution. The Tribal Code of the KBIC, approved by the Secretary of the Interior on October 17, 1974, authorizes the Council to issue gambling licenses to operate "a public place or device where a risk is taken on

---

* The Honorable Charles W. Joiner, Senior District Judge, United States District Court for the    Eastern District of Michigan, sitting by designation.

a chance of winning money or other valuable property." The Code was amended in 1981 to authorize the issuance of two types of licenses: one for non-profit or charitable groups, and one for persons or entities proposing to operate or maintain gambling operations for profit. In 1984, the Council issued regulations governing the manner in which the gambling ordinance is to be administered and enforced.

The Dakotas, who are enrolled members of the KBIC, were issued a license by the Council on January 17, 1984, to operate a gambling business for profit. Pursuant to this license, the Dakotas were authorized to conduct gambling activities, including blackjack, craps, and poker, at a newly constructed building located within the territory controlled by the KBIC.

On September 19, 1984, the United States and the State of Michigan[1] brought this action seeking a declaratory judgment that the Dakotas' gambling activities were in violation of the Organized Crime Control Act of 1970, 18 U.S.C. § 1955. The government sought injunctive relief enjoining the KBIC from issuing commercial gambling licenses and enjoining the Dakotas from continuing to operate a commercial gambling business. Cross-motions for summary judgment were served, and a hearing was conducted on March 1, 1985. On June 28, 1985, the court issued its Opinion and Judgment granting the complete relief requested by the government.

## II.

The Organized Crime Control Act of 1970, 18 U.S.C. § 1955 provides:

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

There is no dispute that all of the elements required to establish a violation of section 1955 are present in this case with the exception of the requirement in subsection (b)(1)(i) regarding the violation of state law. The central issue raised in this appeal is whether the district court erred in finding the Dakotas' gambling enterprise to be in violation of Michigan law.

Defendants argue that a gambling business licensed by an Indian tribe is "a violation of the law of a state" under 18 U.S.C. § 1955 only if the relevant state law is "civil/prohibitory" in nature and not if the state law is "civil/regulatory" in nature. The government argues that the criminal/prohibitory-civil/regulatory dichotomy, which was developed to aid in the interpretation of "Public Law 280,"[2] *see Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976), is inappropriate in determining the applicability of state law under section 1955. The government further argues that even under that analysis Michigan's law regarding commercial casino gambling is criminal/prohibitory, and, therefore, the Dakotas' gambling operations are prohibited by section 1955. The district court accepted this latter contention.

### A.

At the outset, we agree with the government that the criminal/prohibitory-civ-

**1.** The district court dismissed the State of Michigan as a party plaintiff on November 27, 1984. No appeal was taken from that order. The State has been granted leave to appear as amicus curiae both before the district court and this court.

**2.** Act of Aug. 15, 1953, Pub.L.No. 280, 67 Stat. 589 (codified as amended at 28 U.S.C. § 1360).

il/regulatory test is inappropriate to an interpretation of 18 U.S.C. § 1955. As noted, the criminal/prohibitory-civil/regulatory dichotomy was originally developed to aid in the interpretation of Public Law 280, which expressly granted certain states (other than Michigan) criminal and civil jurisdiction over Indian reservations. Because Public Law 280 undermines the long-standing doctrine that federally recognized Indian tribes and their members are immune from the application of state law for on-reservation activities, see New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 332, 103 S.Ct. 2378, 2385, 76 L.Ed.2d 324 (1983), the Supreme Court has narrowly construed the reach of the statute, holding that Public Law 280 does not authorize states generally to assert civil regulatory powers over Indian reservations. See Bryan, 426 U.S. at 388–89, 96 S.Ct. at 2110–11.

These concerns for protecting Indian sovereignty from state interference prompted courts to develop the criminal/prohibitory-civil/regulatory test. See, e.g., Barona Group v. Duffy, 694 F.2d 1185, 1187–88 (9th Cir.1982), cert. denied, 461 U.S. 929, 103 S.Ct. 2091, 77 L.Ed.2d 301 (1983). Under this test, while a Public Law 280 state may impose on Indian reservations state criminal laws which prohibit certain activities, the state may not so impose general civil laws which merely regulate the activity.

We believe these policy reasons underlying the use of the criminal/prohibitory-civil/regulatory test in Public Law 280 cases are not applicable to the statute at issue here. Title 18 U.S.C. § 1955 is a federal statute that extends federal rather than state jurisdiction over Indian tribes. "[T]ribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States." Washington v. Confederated Tribes of the Colville Indian Reservation, 447 U.S. 134, 154, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10 (1980). Because any prosecutions under 18 U.S.C. § 1955 must be brought in federal court, exclusive of the state courts, see 18 U.S.C. § 3231, the statute raises no danger of encroachment on Indian sovereignty by the states.

Furthermore, the language of section 1955 contains no indication that the criminal/prohibitory-civil/regulatory test should be used in its interpretation. Under these circumstances, we think it inappropriate to apply here the criminal/prohibitory-civil/regulatory test which was developed in a different context to address different concerns. Cf. Rice v. Rehner, 463 U.S. 713, 734 n. 18, 103 S.Ct. 3291, 3303 n. 18, 77 L.Ed.2d 961 (1983) (refusing to distinguish between state "substantive" and "regulatory" law in applying 18 U.S.C. § 1161 in part because no such distinction is present in the text or legislative history of the statute).

We also note that the Bryan Court, in interpreting Public Law 280, stated that "in construing this 'admittedly ambiguous' statute, ... we must be guided by that 'eminently sound and vital canon,' ... that 'statutes passed for the benefit of dependent Indian tribes ... are to be liberally construed, doubtful expressions being resolved in favor of the Indians.'" Bryan, 426 U.S. at 392, 96 S.Ct. at 2112 (citations omitted). The criminal/prohibitory-civil/regulatory analysis serves this "sound and vital canon" by exempting from the reach of Public Law 280 state laws that are not prohibitory in nature. However, 18 U.S.C. § 1955 was not enacted for the benefit of Indian tribes. Rather, it is a federal criminal statute, of nationwide application, which by its terms is designed to punish any individual who engages in gambling businesses above statutorily defined levels which are illegal under state law.

Moreover, the "admittedly ambiguous" Public Law 280 employs the broad term "criminal law," the application of which requires some sort of judicial interpretation. Title 18 U.S.C. § 1955, on the other hand, is a straightforward and narrowly tailored statute that applies specifically to an "illegal gambling business" which is defined by the statute as a gambling business operated in "violation of the law of a state." This standard is clear; the issue is

whether the challenged gambling operation is in violation of, in this case, Michigan law.

Finally, we note the criminal/prohibitory-civil/regulatory test requires courts to make arbitrary classifications of state laws. As states frequently pass laws that to some extent both regulate and prohibit a given activity, the test is difficult to apply. This difficulty further supports our conclusion that the criminal/prohibitory-civil/regulatory test should not be extended outside of the context in which it was developed.[3]

## B.

Free from the constraints of the confusing criminal/prohibitory-civil/regulatory analysis, resolution of the instant appeal is not difficult. The issue becomes simply whether the Dakotas' gambling business is in violation of the laws of Michigan. Clearly, it is.

The activities at issue in this case are not, as defendants would have it, simply poker and blackjack. Rather, as the district court concluded, the Dakotas are engaged in commercial casino gambling.[4] Such enterprises are illegal in Michigan. *See* Mich.Comp.Laws Ann. § 750.301 *et seq.* For example, Michigan prohibits taking or receiving money contingent upon the result of a game not known by the parties to be certain, *id.* § 750.301, keeping or occupying a building where gaming is permitted, *id.* § 750.302, and maintaining "a gaming room, gaming table, game of skill or chance, or game partly of skill and partly of chance, used for gaming, ...," *id.* § 750.303(1) (Supp.1986). The Dakotas' gambling enterprise falls within these prohibitions and, accordingly, runs afoul of 18 U.S.C. § 1955.

In reaching this decision we reiterate that because any prosecutions under 18 U.S.C. § 1955 must be brought in federal court and because the statute does not represent an exercise of state jurisdiction, Indian sovereignty is protected from encroachment by the states. We believe our decision today presents no threat to Indian sovereignty, but rather only underscores the supremacy of federal law.

## III.

In conclusion, we find the Dakotas' gambling enterprise to be in violation of the law of Michigan. Accordingly, the district court's declaratory judgment that the Dakotas' operations are in violation of 18

---

**3.** For this reason, the Public Law 280 cases relied on by defendants, *Cabazon Band of Mission Indians v. County of Riverside,* 783 F.2d 900 (9th Cir.1986), *appeal juris. postponed,* —— U.S. ——, 106 S.Ct. 2888, 90 L.Ed.2d 975 (1986); *Barona Group v. Duffy,* 694 F.2d 1185 (9th Cir. 1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2091, 77 L.Ed.2d 301 (1983); *Seminole Tribe of Florida v. Butterworth,* 658 F.2d 310 (5th Cir.1981), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1717, 72 L.Ed.2d 138 (1982); and *Oneida Tribe of Indians v. Wisconsin,* 518 F.Supp. 712 (W.D.Wis.1981), are inapposite.

We note that the Ninth Circuit has concluded that the criminal/prohibitory-civil/regulatory test applies both to Public Law 280 assertions of state authority over Indian tribes and to section 1955 assertions of federal authority over those tribes. *See Cabazon,* 783 F.2d at 903; and *Barona,* 694 F.2d at 1190. For the reasons expressed herein, we disagree with those decisions.

**4.** Defendants' argument that the Michigan statutory scheme does not draw a distinction between commercial and noncommercial casino gambling is without merit. Defendants make much of the fact that Michigan allows "qualified organizations" to conduct "millionaire parties" at which "wagers are placed upon games of chance customarily associated with a gambling casino through the use of imitation money...." Mich.Comp.Laws Ann. § 432.102(9) (Supp. 1986).

However, Michigan only permits such casino gambling to be conducted in a noncommercial manner. For example, "[t]he entire net proceeds of a ... millionaire party shall be devoted exclusively to the lawful purposes of the licensee." *Id.* § 432.109 (Supp.1986). The licensee must be a "bona fide religious, educational, service, senior citizens, fraternal, or veterans' organization which operates *without profit* to its members...." *Id.* § 432.103(6) (Supp.1986) (emphasis supplied). Furthermore,

Rules adopted and promulgated by the commissioner shall insure the integrity and honest operation of bingo games, millionaire parties, and charity games and shall be consistent with the legislative objective that bingo, millionaire parties, and charity games shall be conducted in a friendly, social, and *noncommercial* manner.

*Id.* § 432.113(3) (Supp.1986) (emphasis supplied).

U.S.C. § 1955 and its order enjoining the KBIC from issuing commercial gambling licenses and enjoining the Dakotas from operating their commercial casino gambling business is AFFIRMED. Given this holding, we need not reach the parties' remaining arguments.