**SISSETON–WAHPETON SIOUX TRIBE, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, and Edwin Meese, II, in his capacity as Attorney General of the United States, Defendants.**

**Civ. No. 88–1014.**

United States District Court, D. South Dakota, N.D.

Aug. 3, 1989.

---

Bertram E. Hirsch, Floral Park, N.Y., Terry L. Pechota, Rapid City, S.D., for Sisseton–Wahpeton Sioux Tribe.

Philip N. Hogen, U.S. Atty., Sioux Falls, S.D., Benjamin C. Flannagan, Atty., Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

Before the Court are two consolidated

civil cases [1] in which the parties seek declaratory and injunctive relief. The parties are the United States of America and the Sisseton–Wahpeton Sioux Tribe (hereafter SWST). The SWST has established and operates a blackjack gaming operation within Indian Country. This Court takes jurisdiction pursuant to federal question jurisdiction. *See* 28 U.S.C. §§ 1331 & 1362.

## I. STATEMENT OF FACTS.

Over five thousand members of the SWST live on the Lake Traverse Reservation near Watertown, South Dakota. The SWST is an Indian Tribe recognized by the United States and the reservation is located in Indian Country. Within the Lake Traverse Reservation exists the Dakota Sioux Entertainment Center (hereafter Entertainment Center). At this site, the SWST currently conducts a blackjack gaming enterprise.

The blackjack operation is operated under the authority of Sisseton–Wahpeton Ordinance No. 83–03A. Although the funds for the initial start-up costs were provided by an outsider from California, the enterprise is owned, operated and supervised directly by the SWST. Forty percent of the net income from the endeavor is paid to the California financier, Nix Enterprises.

The blackjack venture commenced on April 15, 1988. Subsequent to May 1, 1988, the scope of the undertaking was increased. SWST blackjack tables have pot limits up to a maximum of one hundred dollars. As many as twenty tables may operate at the Entertainment Center, and non-members of the SWST are permitted to participate in the gambling. Indeed, at any given time, it is estimated that only five percent of the casino's patrons are SWST members. In addition to the blackjack operation, the Entertainment Center operates bingo and poker games. Some, but not all, of these other games were conducted prior to May 1, 1988.

On October 17, 1988, Congress enacted the Indian Gaming Regulatory Act (IGRA), Pub.L. No. 100–497, 102 Stat. 2467. *See* 25 U.S.C. §§ 2701–2721. IGRA's purpose is to provide a basis for the establishment and regulation of gaming ventures operated by Indian tribes on Indian lands.[2] *See* 25 U.S.C. § 2702. On November 8, 1988, the State of South Dakota amended its Constitution to allow the City of Deadwood to vote on whether to approve certain card games and other gambling activity. *See* Article III, § 25 of the Constitution of the State of South Dakota.[3] After subsequent

---

**1.** On April 15, 1988, the SWST filed a complaint (Civ. No. 88–1014) seeking a declaration that it had a legal right to establish and operate a blackjack venture. The SWST requested injunctive relief against the United States in this regard. On June 14, 1988, the United States cross-filed (Civ. No. 88–1025) for a declaration that the blackjack venture was in violation of federal law. The United States requested an injunction enjoining the SWST from continuing to operate the blackjack gaming facility. The Court issued an Order, filed August 8, 1988, that consolidated the two cases.

**2.** Section three of IGRA provides a "Declaration of Policy":

The purpose of this Act is—
(1) to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal government;
(2) to provide a statutory basis for the regulation of gaming by an Indian tribe adequate to shield it from organized crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of the gaming operation, and to assure that gaming is con-

ducted fairly and honestly by both the operator and players; and
(3) to declare that the establishment of independent Federal regulatory authority for gaming on Indian lands, the establishing of Federal standards for gaming on Indian lands, and the establishment of a National Indian Gaming Commission are necessary to meet congressional concerns regarding gaming and to protect such gaming as a means of generating tribal revenue.
25 U.S.C. § 2702.

**3.** Section 25, as amended, reads:
. . . Further it shall be lawful for the Legislature to authorize by law, limited card games and slot machines within the city limits of Deadwood, provided that 60% of the voters of the City of Deadwood approve legislatively authorized card games and slot machines at an election called for such purpose. The entire net Municipal proceeds of such card games and slot machines shall be devoted to the Historic Restoration and Preservation of Deadwood.
South Dakota State Constitution, Article III, § 25.

statutory enactments, the voters of the City of Deadwood in fact approved such gaming on April 11, 1989. *See* SDCL § 42–7B–1 *et seq.*[4]

## II. LAW AND ANALYSIS.

IGRA defines three separate classes of gaming. 25 U.S.C. § 2703. The classes are referred to within the Act as class I, class II, and class III gaming. Class I gaming is limited to social games that are either ceremonial or have prizes limited to nominal amounts.[5] Section 4(7)(B)(i) of IGRA states that class II gaming does not include blackjack.[6] Finally, class III gaming is defined to include all gaming that does not fall within class I or II.[7]

A grandfather clause exists in 25 U.S.C. § 2703(7)(C) which applies to card games operated by an Indian tribe in South Dakota on or before May 1, 1988.[8] To the extent that the nature and scope of such gaming is unchanged from that operated on or before May 1, 1988, the gaming which might otherwise be class III gaming is instead categorized as class II gaming.

In the instant case, however, the SWST admits in its interrogatories that there has been an increase in the scope of the blackjack venture subsequent to May 1, 1988. *See* Answer to Government Interrogatory No. 13. The SWST has increased the hours of operation of its facility from eight hours per day, three days per week, to six days per week, including continuous play from 5:00 p.m., Friday evening, until 1:00 a.m., Monday morning. *See* SWST Statement of Undisputed Material Facts, at 1 (filed July 10, 1989).

Accordingly, the Court finds that IGRA classifies the SWST blackjack venture as class III gaming. For class III gaming to comply with 25 U.S.C. § 2710(d)(3)(A) mandates,[9] the Indian tribe must request the state in which the gaming operation is located to enter into negotiations for the purpose of entering into a tribal-state compact. Such a compact would govern the conduct of gaming activities. The SWST has not indicated to this Court any past or present intention to pursue a tribal-state compact.[10] As a consequence, the SWST

**4.** The Constitutional amendment to Article III, § 25 authorized legislative enactment of SDCL 42–7B–1. In turn, SDCL 42–7B–1 put the question of gaming before the voters of the City of Deadwood. The commission note to SDCL § 42–7B–1 acknowledges that the voters of the City of Deadwood approved allowing limited card games by a margin of 690 in favor to 230 against.

**5.** Class I gaming is defined as follows:
The term "class I gaming" means social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as part of, or in connection with, tribal ceremonies or celebrations.
25 U.S.C. § 2703(6).

**6.** The Act clearly excludes blackjack from classification as class II gaming. The provision reads:
The term "class II" gaming does not include—
(i) any banking card games, including baccarat, chemin de fer, or *blackjack* (21) ...
25 U.S.C. § 2703(7)(B)(i) (emphasis added).

**7.** IGRA defines "class III" gaming as "all forms of gaming that are not class I gaming or class II gaming." 25 U.S.C. § 2703(8).

**8.** The grandfather clause states that:
Notwithstanding any other provisions of this paragraph, the term "class II gaming" includes those card games played in the State of

Michigan, the State of North Dakota, the State of South Dakota, or the State of Washington, that were actually operated in such State by an Indian tribe on or before May 1, 1988, but *only to the extent of the nature and scope* of the card games that were actually operated by an Indian tribe in such State on or before such date....
25 U.S.C. § 2703(7)(C) (emphasis added).

**9.** IGRA requires an Indian tribe that conducts class III gaming to enter into good faith negotiations to form a tribal-state compact. Section 11 of IGRA describes this requirement:
Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal–State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter such a compact.
25 U.S.C. § 2710(d)(3)(A).

**10.** It is unclear what negotiations have taken place between the SWST and the State of South Dakota. The SWST has made no mention of any such negotiations in any of their papers filed with this Court. If in fact the SWST has engaged in certain negotiations to pursue a tribal-state compact, the gaming would still have to

blackjack enterprise fails to comply with IGRA provisions.

Moreover, even if the grandfather clause operates to classify the SWST blackjack venture as class II gaming, the undertaking would still be unlawful under IGRA. This is because 25 U.S.C. § 2710(b)(1)(A) provides that class II gaming is lawful only in circumstances where such gaming is permitted of some other person, organization or entity within the state.[11] In other words, if a non-Indian within a state can engage in the particular type of gaming venture, then an Indian tribe in that state may also pursue the same endeavor. Under South Dakota law, however, the "such gaming" that is permitted is blackjack with a bet limit of five dollars. *See* SDCL § 42–7B–14.[12] In contrast, the SWST venture allows bet limits that are as much as one hundred dollars. Therefore, the SWST operation is a different type of gaming for statutory purposes than the gaming autho-

rized by South Dakota for within the City of Deadwood. Indeed, the Court observes that the dollar value of the stakes is a critical variable to distinguish class I gaming from class II gaming. Thus, the SWST blackjack operation violates IGRA provisions regardless of whether it is categorized as class II or class III gaming.

Given this Court's conclusion that the SWST blackjack operation violates IGRA, the question remains as to what relief is available to the United States. IGRA is a comprehensive and pervasive piece of legislation that in many respects preempts other federal laws that might apply to gaming. Where gaming is legal under IGRA provisions, other federal laws that outlaw gambling on Indian lands are preempted. In this case, however, the gaming operation violates IGRA. IGRA specifically grants jurisdiction to the United States over all criminal prosecutions of gaming violations in Indian country. 18 U.S.C. § 1166.[13]

---

comply with the requirements of 25 U.S.C. § 2710(d)(1)(B). *See infra* footnote 11 and accompanying text.

**11.** The Act states that:
An Indian tribe may engage in, or license and regulate, class II gaming on Indian lands within such tribe's jurisdiction, if—
(A) such Indian gaming is located within a State that permits *such gaming* for any purpose by any person, organization, or entity (and such gaming is not otherwise specifically prohibited on Indian lands by Federal law)
. . .
25 U.S.C. § 2710(b)(1)(A) (emphasis added). This requirement applies in equal force to class III gaming. *See* 25 U.S.C. § 2710(d)(1)(B).

**12.** The statute specifically provides:
**Maximum amount of bets.** The amount of a bet may not be more than five dollars on the initial bet or subsequent bet subject to the rules promulgated by the commission.
SDCL § 42–7B–14.

**13.** The complete text of 18 U.S.C. § 1166 is as follows:
**§ 1166. Gambling in Indian country**
(a) Subject to subsection (c), for purposes of Federal law, all State laws pertaining to the licensing, regulation, or prohibition of gaming, including but not limited to criminal sanctions applicable thereto, shall apply in Indian country in the same manner and to the same extent as such laws apply elsewhere in the State.

(b) Whoever in Indian country is guilty of any act or omission involving gambling, whether or not conducted or sanctioned by an Indian tribe, which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State in which the act or omission occurred, under the laws governing the licensing, regulation, or prohibition of gambling in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.
(c) For the purposes of this section, the term "gambling" does not include—
(1) class I gaming or class II gaming regulated by the Indian Gaming Regulatory Act, or
(2) class III gaming conducted under a Tribal–State compact *approved* by the Secretary of the Interior under section 11(d)(8) of the Indian Gaming Regulatory Act [25 USCS § 2710(d)(8)] that is *in effect*.
(d) The United States shall have exclusive jurisdiction over criminal prosecutions of violations of State gambling laws that are made applicable under this section to Indian country, unless an Indian tribe pursuant to a Tribal–State compact approved by the Secretary of the Interior under section 11(d)(8) of the Indian Gaming Regulatory Act [25 USCS § 2710(d)(8)], or under any other provision of Federal law, has consented to the transfer to the State of criminal jurisdiction with respect to gambling on the lands of the Indian tribe.
(Added October 17, 1988, P.L. 100–497, § 23, 102 Stat. 2487.)
(Emphasis added).

Section 1166(a) provides that state laws pertaining to gambling regulation apply in Indian country as elsewhere within the state, subject only to enumerated exceptions within § 1166(c). Class III gaming in the absence of a tribal-state compact is not one of the enumerated exceptions. 18 U.S.C. § 1166(c). As a consequence, both state and federal laws regulate the gaming enterprise. Moreover, although state law is inapplicable to Class II gaming under § 1166(c)(1), federal law applies where gaming activities fail to comply with IGRA provisions.

Accordingly, since the SWST venture constitutes class III gaming, the fact that it would violate state law—to-wit, SDCL § 22–25–1 [14]—results in a violation of 18 U.S.C. § 1166. Under 18 U.S.C. § 1166(d), the United States holds exclusive jurisdiction to prosecute such a violation. Even if the blackjack operation is categorized as class II gaming, the enterprise would still be in violation of 18 U.S.C. § 1166. This is because the exception codified in 18 U.S.C. § 1166(c)(1) applies only to class I or class II gaming conducted within the legal constraints mandated by IGRA. It would be both meaningless and contradictory to take the position that gaming could be "class II" gaming if it did not meet the requirements that IGRA describes for gaming to qualify for that category. As such, gaming that does not fall within the legal boundary for class II gaming does not fall within the 18 U.S.C. § 1166(c)(1) exception. Thus, the fact that the SWST blackjack venture does not qualify for the § 1166(c)(1) exception leaves 18 U.S.C. § 1166(a) in effect. Section 1166(a) subjects, for purposes of federal law, the SWST undertaking to South Dakota prohibitions and limitations. Therefore, this Court is left with only one conclusion: the SWST blackjack enterprise is illegal under IGRA.[15]

Upon all of the evidence, the Court therefore finds and concludes that the SWST blackjack venture violates IGRA. The Court hereby enters a declaratory judgment pursuant to 28 U.S.C. § 2201 that the SWST blackjack operation violates the provisions of IGRA. *See United States v. Dakota*, 796 F.2d 186, 190–91 (6th Cir. 1986).[16] The SWST is hereby restrained and enjoined from continuing to operate its blackjack venture.

---

**14.** SDCL § 22–25–1 provides that maintenance of a gambling establishment is a criminal offense.

**15.** A separate issue not presently before this Court is raised by the question of whether some other blackjack enterprise conducted by the SWST might be legal. The answer to this question would hinge upon variables such as the facility's hours of operation, maximum betting limits, and/or the existence of a tribal-state compact.

**16.** In *Dakota,* the Sixth Circuit affirmed a district court decision granting declaratory and injunctive relief. The case involved the application of the Organized Crime Control Act of 1970 to tribal casino gambling. *Id.* The *Dakota* case was decided prior to the Congressional enactment of IGRA.