UNITED STATES of America,
Plaintiff–Appellee,

v.

**Ed J. HAGEN, also known as J. Ewald; Martha Jo "Marjo" Hagen; and William C. Hagen, true name William Commodore Hagen, Defendants–Appellants.**

Nos. 91–6130 to 91–6132.

United States Court of Appeals,
Tenth Circuit.

Oct. 9, 1991.

Gary L. Richardson (Ronald E. Hignight, on the brief) of Richardson & Meier, P.C., Tulsa, Okl., for defendants-appellants.

Teresa Black, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with her on the brief), Office of the U.S. Atty., Oklahoma City, Okl., for plaintiff-appellee. ·

Before BALDOCK and EBEL, Circuit Judges, and ANDERSON, District Judge.*

---

\* The Honorable Aldon J. Anderson, District Judge of the United States District Court for the District of Utah, sitting by designation.

EBEL, Circuit Judge.

This appeal addresses two questions. First, are Oklahoma's antigambling statutes, as they relate to the Defendants' bingo operations, unconstitutionally vague or overbroad? Second, are Oklahoma's statutes proscribing commercial bingo insufficiently penal to provide a nexus for prosecution under 18 U.S.C. § 1955. We answer both of these questions in the negative.

### FACTS

The Defendants–Appellants (Defendants) pled guilty to an Information alleging that they operated bingo parlors in the State of Oklahoma in violation of Oklahoma law. The Federal Court for the Western District of Oklahoma accepted their guilty pleas for violation of 18 U.S.C. § 1955.[1] This statute makes it a federal felony to violate state gambling laws if certain other conditions are satisfied.

The Defendants assert only two issues on appeal: First, they argue that the Oklahoma gambling laws' proscription of bingo by for-profit entities is vague and overbroad in violation of the United States Constitution. Second, they argue that this prohibition, to the extent it is constitutional, is insufficiently penal to provide the state law "violation" required under 18 U.S.C. § 1955. We address each of these arguments in turn.

### I.

■ We have already held that Oklahoma's general commercial gambling prohibition, Okla.Stat. tit. 21, § 982, is not unconstitutionally vague or overbroad. *United States v. Hines*, 696 F.2d 722, 727 (10th Cir.1982). To the extent that the Defendants here argue that Oklahoma's more specific statutes proscribing commercial bingo are unconstitutionally vague or overbroad, we cannot agree.

Section 982(B) proscribes commercial gambling, which, as defined in Sections 982(A) and 981, clearly includes commercial

bingo. Commercial gambling includes "[o]perating or receiving all or part of the earnings of a gambling place," Okla.Stat. tit. 21, § 982(A)(1), or "owning, controlling, managing or financing a gambling business." *Id.* § 982(A)(6). A "gambling place" is defined as "any place ... which is used for ... making and settling bets...." *Id.* § 981(4). And a bet is defined as "a bargain in which the parties agree that, dependent upon chance, or in which one of the parties to the transaction has valid reason to believe that it is dependent upon chance, one stands to win or lose something of value specified in the agreement." *Id.* § 981(1).

Bingo, when operated by non-profit organizations under conditions specified in Section 995.1 *et seq.*, is specifically excepted from Oklahoma's general prohibition on commercial gambling. *Id.* § 981(1)(b) ("A bet does not include ... any bingo game ... conducted by an authorized nonprofit organization under the laws of this state pursuant to Title 21, Oklahoma Statutes, Sections 995.1 to 995.18...."). Neither that section, however, nor any other Oklahoma statute, suggests that bingo may be conducted by anyone other than a licensed non-profit group or certain employees of such a group. Section 995.12, in fact, states that "[n]o person, except a licensee operating pursuant to this act, shall conduct any game of bingo for which a charge is made...."

The Defendants do not claim to be a non-profit organization or employees of such an organization; they admit to profiting personally from their bingo operation. Information at 3. Hence, they could not possibly be licensees.

To the extent that the Defendants argue that they operated under licenses obtained from non-profit organizations, this fact does not legitimize their conduct, but rather further condemns that conduct. "A license ... shall not be leased, assigned, sold or transferred ... and no bingo game shall be administered or conducted pursuant to

---

1. All references to U.S.C. and Okla.Stat. herein are to those statutes effective during the dates specified in the Information. To the extent that relevant language in any statute changed during this period, it will be noted.

the provisions of Section 995.1 et seq. of this title except by the organization to which a license has been issued." *Id.* § 995.3.[2]

Hence, Oklahoma's prohibition of commercial bingo, insofar as it applies to the Defendants, is not vague. An "ordinary person exercising ordinary common sense can sufficiently understand and comply with" its terms. *Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973) (quoting *CSC v. Letter Carriers,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973)).

Further, the Defendants' conduct "falls squarely within the 'hard core' of the statute's proscriptions...." *Id.* And no showing has been made that Oklahoma's bingo statutes proscribe any constitutionally protected behavior in which the Defendants have engaged, nor that any First Amendment values are implicated. Hence, the Defendants cannot maintain an overbreadth challenge. *Id.* 413 U.S. at 610, 611, 93 S.Ct. at 2914, 2915 (Where First Amendment values are not implicated, "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.").

In sum, Oklahoma's bingo prohibition is constitutional as applied to the Defendants.

## II.

■ Defendants next argue that the sections of Oklahoma law that they violated are not sufficiently penal to sustain liability under 18 U.S.C. § 1955. We disagree.

Section 1955(b)(1)(i) requires only "a violation of the law of a State...." The Defendants cite a Ninth Circuit case that held that Section 1955 applies only when the state law violated is penal, as opposed to civil. *United States v. Gordon,* 464 F.2d 357, 358 (9th Cir.1972) (per curiam) (Section 1955 inapplicable where violation provides for only civil sanctions). We need not reach the issue of whether a violation must be penal for the purposes of Section 1955, however, as the Oklahoma laws violated by the Defendants are clearly penal.

The penalty section applicable to violations of the Oklahoma bingo statutes (Okla. Stat. tit. 21, §§ 995.1 *et seq.*) expressly declares that "[a]ny person violating the provisions of this act ... shall be guilty of a misdemeanor," punishable by imprisonment, fine, or both. Okla.Stat. tit. 21, § 995.15. It is clear that a misdemeanor is sufficiently penal to warrant liability under 18 U.S.C. § 1955. *See United States v. Matya,* 541 F.2d 741, 748 (8th Cir.1976) (Section 1955 "makes no distinction whatsoever between state felonies and state misdemeanors."), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1101, 51 L.Ed.2d 536 (1977); *see also United States v. Smaldone,* 485 F.2d 1333, 1344, 1351 (10th Cir.1973) (upholding Section 1955 conviction where state gambling laws violated were labeled misdemeanors), *cert. dismissed,* 416 U.S. 917, 94 S.Ct. 1625, 40 L.Ed.2d 119, and *cert. denied,* 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974).

The Defendants argue that the mere fact that a statute labels itself a misdemeanor and includes penal sanctions does not make it penal. For support they cite a line of cases that distinguish "regulatory" from "prohibitory" statutes by looking to states' "public policy," rather than the penalty prescribed for violation of the statute. *See Barona Group of Capitan Grande Band of Mission Indians v. Duffy,* 694 F.2d 1185, 1189 (9th Cir.1982) (California bingo law "regulatory"), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2091, 77 L.Ed.2d 301 (1983); *Seminole Tribe of Florida v. Butterworth,* 658 F.2d 310, 314–15 (5th Cir.1981) (Florida bingo statute "regulatory"), *cert. denied,*

**2.** Additionally, Section 995.1a specified that "[t]he license to conduct a bingo game shall not be leased or assigned to a commercial establishment." And throughout the period covered by the Information, Section 995.1 specified that bingo may be conducted under a license only "by the officers, employees or members of [the licensed non-profit] organization without compensation therefor ..., and not by agreement or contract with any other person or organization for which any consideration or compensation is provided." Hence, it was clear, at all relevant times, that a transferred license would not exempt the defendants from Oklahoma's commercial gambling prohibition.

455 U.S. 1020, 102 S.Ct. 1717, 72 L.Ed.2d 138 (1982); *see also Iowa Tribe of Indians v. Kansas,* 787 F.2d 1434, 1435 n. 1 (10th Cir.1986) (acknowledging but not applying prohibitory/regulatory distinction).

The distinction between regulatory and prohibitory laws in these cases, however, was for the purpose of determining the applicability of state statutes on Indian lands. *See Bryan v. Itasca County,* 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976) (federal statute grants certain states criminal-prohibitory but not civil-regulatory jurisdiction over Indian lands). These cases look beyond the plain meaning of penal—whether a statute prescribes penalties for violators—because the plain-meaning approach in that context "could result in the conversion of every regulatory statute into a prohibitory one," giving states unfettered jurisdiction over Indian lands. *Butterworth,* 658 F.2d at 314. This fear, however, and hence the regulatory/prohibitory distinction, is not germane to the present case, which involves no issues of jurisdiction over Indian lands. Thus, we see no reason to go beyond the plain meaning of "penal" for purposes of 18 U.S.C. § 1955. *See Rice v. Rehner,* 463 U.S. 713, 734–35 n. 18, 103 S.Ct. 3291, 3303–04 n. 18, 77 L.Ed.2d 961 (1983) ("In the absence of a context that might possibly require [a distinction between state 'substantive' and 'regulatory' laws], we are reluctant to make such a distinction.") (citing *Bryan,* 426 U.S. at 390, 96 S.Ct. at 2111).[3]

The Oklahoma bingo prohibition, which declares itself a misdemeanor and prescribes jail terms and/or fines for its violators, is clearly penal within the plain meaning of that term and sufficient to warrant liability under 18 U.S.C. § 1955.

Accordingly, the judgments below are AFFIRMED.

---

**3.** One case cited by the Defendants, *United States v. Farris,* 624 F.2d 890 (9th Cir.1980), *cert. denied,* 449 U.S. 1111, 101 S.Ct. 919, 66 L.Ed.2d 839 (1981), looked to a state's "public policy" in the context of Section 1955. *Id.* at 895. This inquiry, however, was for the purpose of determining whether Section 1955 could extend the policy underlying a state gambling law to Indian land even though the law itself could not be enforced on that land. Further, that case did not turn on whether the policy was prohibitory or regulatory.