**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 98-60769

UNITED STATES OF AMERICA                          Plaintiff-Appellee,

versus

BROADUS VANLANDINGHAM STEWART, JR.
a/k/a Sealed Defendant 2                          Defendant-Appellant.
_____

No. 98-60787

UNITED STATES OF AMERICA                          Plaintiff-Appellee,

versus

JOSEPH D. MCCANDLESS,
a/k/a Sealed Defendant 8                          Defendant-Appellant.
_____

No. 98-60796

UNITED STATES OF AMERICA                          Plaintiff-Appellee,

versus

CHRISTOPHER CRAWFORD                              Defendant-Appellant.
_____

No. 99-60028

UNITED STATES OF AMERICA                          Plaintiff-Appellee,

versus

GEORGE W. BRADFORD                                Defendant-Appellant.
_____

No. 99-60221

UNITED STATES OF AMERICA                          Plaintiff-Appellee,

versus

BROADUS VANLANDINGHAM STEWART, SR.

1

_____

Appeals from the United States District Court
for the Southern District of Mississippi

_____

March 3, 2000

Before JONES, DUHÉ, and WIENER, Circuit Judges.

PER CURIAM:

In this consolidated case, Defendants-Appellants Broadus Vanlandingham Stewart, Jr., Broadus Vandlandingham Stewart, Sr., Joseph D. McCandless, Christopher Crawford, and George W. Bradford ("Appellants") challenge their convictions under 18 U.S.C. § 1955 for operating an illegal gambling business (in particular, an unlicensed sports betting, or bookmaking, operation) in violation of Mississippi Code § 97-33-1.[1]  Following indictment, Appellants entered conditional guilty pleas, preserving the right to appeal the legal question whether the indictment properly charged a violation of § 1955.  We review the sufficiency of an indictment de novo.[2]

Section 1955 defines an "illegal gambling business" as a gambling business which "is a violation of the law of a State or

_____

[1] Appellant Broadus V. Stewart, Jr. previously appealed the district court's denial of his motion for a writ of error coram nobis seeking reversal of the same conviction.  A different panel of this court rejected the arguments that Stewart and the other Appellants re-assert in this appeal and affirmed the district court's denial of the writ in an unpublished opinion.  United States v. Stewart, No. 98-60785 (5th Cir. Nov. 24, 1999) (per curiam).

[2] United States v. Dabrera-Teran, 168 F.3d 141, 143 (5th Cir. 1999).

political subdivision in which it is conducted." Appellants contend the state statute to which they pleaded guilty was regulatory rather than criminal in nature and, as such, cannot support an indictment under § 1955.

Although we are not entirely convinced § 1955 has been consistently interpreted to contain the unwritten qualifier of "violation of [a criminal] law of the State,"[3] as Appellants suggest, we assume arguendo that it does, and proceed to assess whether the Mississippi statute in question is sufficiently criminal in nature to support a federal charge under § 1955.

Appellants contend that they did not violate a criminal law because sports bookmaking is legal in Mississippi. Prior to the enactment of the Mississippi Gaming Control Act in 1990, all gaming was criminally prohibited in Mississippi. After 1990, gambling was made generally legal, subject to state licensing and regulation; therefore, Appellants contend, their bookmaking activities violated regulatory, but not criminal, state laws.

Section § 75-76-55(1)(a) of the Gaming Control Act specifies that bookmaking is legal only if a license is obtained: "It is unlawful for any person...without having first procured and

---

[3] See, e.g., United States v. Gordon, 464 F.2d 357, 358 (9th Cir. 1972) (finding § 1955 "the law of a state" language ambiguous regarding whether violation of state criminal law or any law, civil or criminal, was required and resolving ambiguity in favor of criminal defendant). Compare United States v. Rowe, 599 F.2d 1319, 1320 (4th Cir. 1979) (holding that penalty for refusing a breathalyzer test is civil under Virginia law and thus cannot be enforced under the Assimilative Crimes Act) with United States v. Manning, 700 F. Supp. 1001, 1003 (W.D. Wis. 1988) (holding drunk driving is assimilated even though statute explicitly provides that first offense is civil).

thereafter maintaining in effect a state gaming license...[t]o deal, operate, carry on, conduct, maintain or expose for play in the state of Mississippi any gambling device, slot machine, race book, or sports pool."  It is undisputed that Appellants in this case did not have a license for their bookmaking operation.

Appellants were indicted for violation of § 97-33-1, which provides generally that "upon conviction" for various forms of betting, gaming, or wagering, a person "shall be fined in a sum not more than Five Hundred Dollars ($500.00); and unless such fine and costs be immediately paid, shall be imprisoned for any period not more than ninety (90) days."  Following the general prohibition, the section provides exceptions for gambling (1) on a vessel on the Mississippi River or Gulf Coast if approved by registered voters in the county where the port is located or (2) "[t]hat is legal under the laws of the State of Mississippi."  Licensed bookmaking, as noted above, is legal.

Appellants' contention that § 97-33-1 is a regulatory or remedial, rather than criminal or penal, statute is untenable on the face of the statute itself.  First, the provision appears in the Mississippi criminal code.[4]  Second, it discusses conviction, fines, imprisonment, and prohibitions, which terms by their plain

---

[4] Cf. Kansas v. Hendricks, 521 U.S. 346, 361 (1997) (holding that question of whether code is civil or criminal is one of statutory interpretation and noting that Kansas's objective to create a civil proceeding is evidenced by its placement of the Sexually Violent Predator Act within the Kansas probate code, instead of the criminal code).

meaning suggest criminal proceedings.[5]  Third, the provision establishes a general prohibition against gambling but carves out exceptions for some gambling activities specifically permitted by law.  The regulatory, as opposed to criminal, aspects of Mississippi gambling laws relate to only those exceptions that constitute specifically authorized gambling activities.[6]

In further support of their argument that violation of a state gambling law is not "criminal" and thus cannot trigger § 1995, Appellants rely on § 97-33-29 of the Mississippi criminal code, which provides: "All laws made or to be made for the suppression of gambling or gaming, are remedial and not penal statutes, and shall be so construed by the courts."  This particular provision has not been interpreted in modern case law in this context,[7] but the Mississippi Supreme Court in 1903, in Fuller v. State[8] held -- consistent with even earlier opinions[9] -- that the provision was

---

[5] For example, Black's Law Dictionary defines "conviction" as "the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged."  "Convict" is defined as "[t]o find a person guilty of a criminal charge"; the definition notes that the word formerly was used also in the sense of finding against the defendant in a criminal case.  BLACK'S LAW DICTIONARY 333-34 (6th ed. 1990).

[6] See Heacock v. United States, 40 F. Supp. 820, 822 (S.D. Miss. 1999) (holding that unlicensed gambling "was clearly criminal and illegal").

[7] But see Weinstein v. Sea View, Inc., 188 F.2d 116, 117-18 (5th Cir. 1951) (citing "remedial not penal" provision to support holding that six-year, rather than one-year, statute of limitations applied to claim by minor children for father's gambling losses).

[8] 35 So. 214 (Miss. 1903).

[9] Cain v. State, 21 Miss. 456 (Miss. Err. & App. 1850) ("The statute on which the indictment is founded is declared to be

5

intended to clarify that criminal laws prohibiting gambling were to be construed liberally, as an exception to the normal rule of lenity, requiring strict construction of criminal statutes in favor of the accused. In <u>Fuller</u>, the court held that the predecessor to § 97-33-1 authorized imprisonment in addition -- not just as an alternative -- to a fine and stated: "We are fortified in this position by that provision of our criminal law which says that all laws in reference to gaming are remedial, and are to be construed liberally -- not liberally in favor of the culprit, but for the suppression of vice."[10]

We decline Appellants' invitation to (1) equate "remedial" with regulatory and "penal" with criminal and (2) rely on § 97-33-1 to overturn their indictments under § 1955. The Mississippi Supreme Court, in construing "that provision of our <u>criminal</u> law" (emphasis added) clarified that the word "remedial" called for gaming laws to be construed liberally <u>against</u> the criminal; it has never held that the provision removed all prohibitory gambling laws from the criminal code.

Appellants further contend that a statement by the Mississippi Supreme Court from 1903 should not be controlling in this case because the public policy against gambling has changed since that time; rather than considering it a "vice," Mississippi now

remedial and not a penal statute. The object of this provision must have been to get rid of the general rule which requires that penal statues should be construed strictly."); <u>Seal v. State</u>, 21 Miss. 286 (Miss. Err. & App. 1850); <u>Johnston v. State</u>, 15 Miss. 58 (Miss. Err. & App. 1846).

[10] <u>Fuller</u>, 35 So. at 215.

generally allows gambling if licensed.  We disagree.  <u>Unlicensed</u>, unregulated gambling is still against the state's public policy.[11] Moreover, we are <u>Erie</u>-bound to apply the controlling state law, regardless of its vintage.  We are not at all convinced that, even after the passage of the Gaming Control Act, § 97-33-1 defeats the proposition that unlicensed gambling violates Mississippi criminal law and thus constitutes a valid basis for indictment under § 1995.

We also reject Appellants' reliance on a line of cases interpreting a federal statute that allows specified states to regulate Indian tribes.  To narrow the reach of that statute, which undercut the traditional immunity of Indian reservations from application of state law, the Supreme Court held that the states in question may impose criminal but not regulatory authority over sovereign Indian tribes.[12]  Like the Sixth and Tenth Circuits, "we think it inappropriate to apply here the criminal/prohibitory-civil/regulatory test which was developed in a different context to address different concerns."[13]  We decline to adopt that test to interpret § 1995's "violation of the law of a state" requirement.  Accordingly, we affirm the district court's judgment of conviction and the sentences imposed following Appellants' guilty pleas for violation of 18 U.S.C. § 1955.

---

[11] <u>See</u> <u>Heacock</u>, 40 F. Supp. at 822 ("All other gambling in Mississippi not specifically permitted by law is contrary to the public policy of Mississippi and is criminal.").

[12] <u>See</u> <u>Bryan v. Itasca Co.</u>, 426 U.S. 373, 388-89 (1976).

[13] <u>United States v. Dakota</u>, 796 F.2d 186, 1888 (6th Cir. 1986); <u>see also</u> <u>United States v. Hagen</u>, 951 F.2d 261, 264 (10th Cir. 1991).

AFFIRMED